## No. 4976.

MRS. ANNE FORD *v.* MRS. ANNE KITTREDGE, Administratrix.

The creditor of a succession can call upon the courts of competent jurisdiction to see that the administration thereof be properly conducted.

This court sees no warrant in the law of Louisiana for answering in the affirmative the following questions: If a wife sue her husband for a separation from bed and board and a dissolution of the community which existed between them, and judgment is pronounced in her favor, dissolving the community; and if, after living apart for several years, and no judgment of divorce has been pronounced between them, they become reconciled, does reconciliation wipe out the judgment of separation and replace the parties in the same position they were in before it was rendered ? Does property acquired by either of the spouses between the time the judgment was rendered and the reconciliation fall into the community ?

There is no article in the Louisiana Code which corresponds with the article 1451 of the Code Napoleon. It was the law of France, even before the adoption of that code, that a community which had been dissolved might be re-established. Here there is no such law.

The administratrix, in this case, has not filed an account of her administration within a twelvemonth. The law makes this her duty, for the non-performance of which, the penalty is dismissal from office.

APPEAL from the Parish Court, parish of Assumption.     *Tete, J. Le Blanc & Walter Guion,* for plaintiff and appellant.  *Nichols & Folse,* for defendant and appellee.

MORGAN, J.   In 1855, plaintiff instituted suit, in which she prayed to be separated from bed and board from her husband, and also for a dissolving of the community.   The same judgment which pronounced the separation dissolved the community of acquets and gains which had existed between them, and reserved the question of the settlement of the community for a future occasion.  Subsequently, by agreement between the parties, plaintiff's rights in the community were fixed at ten thousand dollars, for which judgment was rendered in her favor. Up to and including the year 1860, she received $1000 per annum from her husband as interest on this judgment.  She then received £30, £100, and in 1864 £1000.   Shortly after the judgment of separation, she went to Ireland, where she taught school, realizing therefrom more than £1200.   She received £50 from some friends in Ireland.  She sold the good will of her school and her furniture for £150.   Her funds were increased by the rise in consols, in which she had invested.

She left Ireland in 1866, taking with her eleven or twelve thousand dollars, and left in the bank in Dublin £1200. In 1866, she applied to her husband (from whom she was still separated) to invest her means for her, which he told her he could do, with Dr. E. E. Kittredge's name as security. She sent to Ireland for her £1200, which came to her in a sterling bill of exchange. This bill was sent to her merchants here, who sold the same for about $8000. The proceeds were given by the merchants to her husband.

She claims to be the owner of a note which reads as follows:

" Assumption, La., June 7, 1867.

" $8000. On the first day of January, 1869, we or either of us promise to pay to our order at the office of the recorder of this parish, the sum of eight thousand dollars, value received, with interest at the rate of eight per cent. per annum from maturity till paid.

" Signed,                  "F. W. PIKE,
                               "E. E. KITTREDGE."

The note is indorsed in blank by the makers. Plaintiff says it belongs to her.

No proceedings were ever taken to convert the judgment of separation into a divorce, and in May, 1868, thirteen years after it was rendered, plaintiff and her husband became reconciled, and are now living together as man and wife. E. E. Kittredge died. His succession was opened. His widow was appointed administratrix thereof.

This suit is instituted by Mrs. Ford, for the sole purpose of having Mrs. Kittredge destituted from her trust as administratrix, for maladministration and failure to perform her duties. In this she is joined by her husband. The petition reads " The petition of Mrs. Anne Ford, wife, duly separated in property, and from bed and board from her husband Joseph D. Ford, and of said Ford, etc."

The allegation that she is separated from bed and board is not correct, inasmuch as she was living with him when this suit was instituted. Whether she is or not separate in property from him, or whether she was so or not when the rights which she is now asserting were acquired, is another matter which will be presently inquired into.

It is admitted by counsel in their brief "that it is necessary that plaintiff be a creditor of the succession of Dr. Kittredge, in order that she be permitted to interfere with its administration." The first exception which the defendant pleads to the action is that neither Mrs. Ford nor her husband are creditors of the succession.

We have copied the instrument which the plaintiff says is the evidence of her debt. In the record we find the following document:

" Parish of Assumption, La., June 2, 1871. I hereby acknowledge and recognize the annexed promissory note for eight thousand dollars

($8000) drawn by Dr. E. E. Kittredge and Francis W. Pike, jointly and severally to their own order and by them indorsed in blank, of which Mrs. Anne Ford is the present holder, to be a just and valid claim against the succession of Dr. E. E. Kittredge, to be paid in due course of administration."

(Signed)          ANNE E. KITTREDGE, Administratrix.

This, it seems to us, is the liquidation and acknowledgment of the claim, in conformity with the provisions of the 985th article of the Code of Practice. But she says that when this acknowledgment was made she was ignorant of the fact that the succession of Kittredge had been discharged from responsibility thereon. She says it was discharged because Kittredge was only Pike's security, and that as time had been given to Pike without Kittredge's consent, he is discharged. Pike says that Kittredge was only his security. As between Pike and Kittredge this may be true, although it would be difficult to make out of the document which we have copied above, a contract of suretyship. It seems to us to be a simple promissory note made by two parties who bound themselves towards the world as debtors for the whole amount stipulated therein. Be this as it may, the note was handed to Dr. Ford by Pike, and nothing in his testimony shows that Ford considered it as anything more or less than a promissory note, drawn by two persons, both of whom were liable for the full amount thereof. The time given to Pike, when the note fell due, consists in postponing payment for a certain time upon Pike's paying the interest.

On the thirteenth of July, 1870, the defendant instituted suit against Pike, claiming from him $8000 upon the ground that the note in question was a mere matter of suretyship as between Pike and Kittredge, alleging that the note was then in the hands of Dr. Ford, as the agent of his wife, who was demanding payment thereof. The acknowledgment of indebtedness on the back of the note was made nearly a year after this suit against Pike was instituted. What became of the suit does not appear.

Under these circumstances it appears to us that as between plaintiff and defendant, plaintiff does show an indebtedness on the part of the succession of Kittredge, and it follows that as a creditor she can call upon the courts to see that the administration thereof is properly conducted.

But the defendant contends further that Mrs. Ford is not the owner of the note. She says that it belongs to Dr. Ford. She contends that the judgment dissolving the community between plaintiff and her husband was a mere incident to the judgment of separation from bed and board; that in that judgment she made claim to the restitution of no dotal or paraphernal funds—that she claimed, with regard to

property, nothing but a settlement of the community—and that inasmuch as a reconciliation has taken place between her husband and herself, the judgment of separation from bed and board and the judgment dissolving the community, became *ipso facto* null and void, and that they were, by the reconciliation, replaced in the same situation in which they were prior to the institution of the proceedings which resulted in a separation from bed and board and a dissolution of the community.

Thus this question is now for the first time presented for solution, viz: If a wife sue her husband for separation from bed and board and a dissolution of the community which existed between them, and judgment is pronounced in her favor, and dissolving the community, and if, after being apart for several years, and no judgment of divorce has been pronounced between them, they become reconciled, does the reconciliation wipe out the judgment of separation and replace the parties in the position they were in before it was rendered? Does property acquired by either of the spouses between the time the judgment was rendered and the reconciliation fall into the community? We see no warrant in the law of Louisiana for answering these questions in the affirmative.

Counsel for appellee say that these questions have been frequently passed upon in France, and he cites Troplong, Contrat du Mariage, vol. 2, No. 1466, who says that according to the contract law of France reconciliation is sufficient to efface the separation. "Therefore, as a general rule, separation of property which resulted from a separation from bed and board, ceased by the fact of reconciliation, without publication, without a public act, without any express declaration."

Marcadé, vol. 5, p. 588, sec. 2, goes, perhaps, further. He says: "Les effets de la communauté ainsi rétablie remontent au jour même du mariage, en sorte que, sauf l'exception ci-après, les époux sont réputés n'avoir jamais cessé d'être communs en biens. Ainsi, les biens qu'ils ont pu acheter pendant la séparation, aujourd'hni non avenue, et qui seraient entrés dans la communauté, appartiennent à cette communauté, et les successions ou donations mobilières qui leur sont arrivées y tombent également. * * * En un mot, la communauté est réputée avoir toujours duré; seulement, les actes valablement faits par la femme, qui durant la communauté n'auraient pu émaner que du mari, conservent la même efficacité que s'ils avaient été faits par lui * * * Que si cette portion de la fortune mobilière a été employée par la femme à l'acquisition d'un immeuble, cet immeuble devient un conquêt, comme si, la communauté durant, il avait été acheté par le mari au moyen du capital que la femme y a employé." Duranton expresses similar views.

13

But these authors, in the extracts which we have quoted, are commenting upon the article 1451 of the Code Napoleon, which provides that the community which is dissolved by the separation from bed and board, or simply of property, may be re-established by the consent of the parties; it can not be except by an act passed before a notary. In this case, the re-established community retroacts to the day of marriage; things are placed in the condition that they would have been if there had been no separation. But there is no article in the Louisiana code which corresponds with the article 1451 of the Code Napoleon. Mr. Troplong, in commenting upon the second paragraph of this article (which provides that the consent of the parties must be evidenced by an act passed before a notary public), says that, by the ancient law of France, this formality was not necessary. Still it was the law of France, even before the adoption of the code, that a community which had been dissolved might be re-established. Here there is no such law, and we do not think that we can make one.

Having found that the plaintiff was separated in property from her husband; that the note which is the basis of her claim is her property, and that it is a debt due by the succession of Kittredge, we have now to decide whether the defendant should be deprived of her trust as administratrix thereof.

She has not filed an account of her administration within a twelvemonth. The law makes this her duty, for the nonperformance of which the penalty is dismissal from office. R. S. sec. 9.

She contends that she has no account to render to any one, as she has had no funds in her hands since her last account. Admitting this proposition to be true, which, however, it is not necessary for us to decide, and with reference to which we express no opinion, still the record satisfies us that if she has no funds in hand, it is because she has not properly discharged the duties of her office. The largest portion of the estate upon which she is now administering has been sold, and at the sale she purchased largely. The sale was effected in a partition suit, without objection from her. Such a proceeding, if permissible, can not certainly prejudice creditors. The sale, however, was made and the amount of her bid must be in her hands. The circumstances under which the property was sold rendered it only the more necessary that she should have filed an account in accordance with the law. The opinion to which we have arrived, renders it unnecessary that we should pass upon plaintiff's bills of exceptions.

It is therefore ordered, adjudged and decreed that the judgment of the district court be avoided, annulled and reversed, and that the defendant be removed from the office of administratrix of the estate of her late husband E. E. Kittredge, the defendant to pay the costs in both courts.

Rehearing refused.