No. 1245.

MARY WILLIAMS, WIFE, VS. J. W. GOSS, HUSBAND.

1. A demand for a separation of property may be cumulated with a demand for a separation from bed and board.
2. A separation from bed and board may be obtained on account of habitual intemperance, or cruel treatment. Though both be alleged, proof of either is sufficient.
3. Habitual intemperance is the constant indulgence in such stimulants as wine, whisky, or brandy, whereby intoxication is produced.

APPEAL from the Fifth District Court for the Parish of Ouachita. Richardson, J.

D. M. Sholars for Plaintiff and Appellee.

Boatner & Lamkin for Defendant and Appellant.

The opinion of the court was delivered by

WATKINS, J.   Alleging habitual intemperance and cruel treatment on the part of her husband, to such an extent as to render their longer living together insupportable, plaintiff institutes suit against him for a separation from bed and board, and for a separation of property.

Further alleging that she apprehended the defendant would dispose of the common property during the pendency of the suit, she obtained an injunction restraining him therefrom; and, also, aver-

ring it to be her intention to leave the common domicile, she prayed for alimony to be awarded her.

To this demand defendant excepted that a demand for a partition of community can not be cumulated with an action for a separation from bed and board.

This exception having been overruled, defendant filed an answer specially denying the charge of habitual intemperance, and alleging that he possessed, at the date of his marriage, $1000 of separate property, which went into the matrimonial community of acquets and gains, and that same constituted a charge in his favor against the said community; and, further, that, at the date that suit was instituted, plaintiff had in her possession $600 of community funds. He demands that said sums, aggregating $1600, be debited against her on final partition and settlement.

On these issues a trial was had and a judgment rendered, decreeing a separation from bed and board between the plaintiff and defendant; decreeing all the property inventoried to be community property, and ordering same to be partitioned in kind, and referring the parties to a notary for that purpose. From this judgment the defendant has appealed.

I.

The first question raised, and which lies at the threshold of discussion is, whether the demand for a separation of property is properly cumulated with plaintiff's demand for separation from bed and board, or is it premature ?

The contention of defendant's counsel is that such a demand is not permissible in such a suit, as it is only an incident of a suit for a final divorce a vinculo matrimonii.

The controlling provisions of the Code on the subject are the following, viz.: "Separation from bed and board carries with it separation of goods and effects." R. C. C. 155.

"Separation from bed and board does not dissolve the bond of matrimony, since the separated husband and wife are not at liberty to marry again; but it puts an end to their conjugal cohabitation, and to the common concerns which existed between them." R. C. C. 136. [Our italics.]

From these precepts it appears to be clear, that not only does the suit for separation from bed and board carry with it a separation of

property, but it puts *an end* " to the common concerns " then existing between the spouses.

In addition thereto, the code further provides that the wife may, during the pendency of a suit for a separation from bed and board, and of community property, require an inventory and appraisement to be made, and may restrain the defendant by injunction from disposing of the same. R. C. C. 149.

And it further declares that "from the day on which the action of separation shall be brought, it shall not be lawful for the husband to contract any debt on account of the community, nor to dispose of the immovables belonging to the same, and any alienation by him made after that time shall be null," etc. R. C. C. 150.

These clear and unambiguous provisions are conclusively against the contention of the defendant's counsel, and they are perfectly consonent with those of Articles 2406 and 2807 of Revised Civil Code, in relation to the dissolution of the community which takes place of right " at the dissolution of the marriage."

During the progress of the trial the defendant was introduced as a witness in his own behalf, but his testimony was objected to as incompetent under the prohibitive terms of R. C. C. 2281, and the objection was sustained—defendant's counsel reserving a bill of exceptions. In argument he frankly admits the correctness of the judge's ruling, but cites the fact as illustrating the great hardship that will be imposed upon him if his exception should not be sustained and the partition proceeded with at this time—he being the only witness by whom proof can be made of the $1600 he claims.

This is simply the misfortune of his situation, and the direct results of his own failure to take the necessary measures to preserve the evidence of his demands. It is no reason why the policy of the law should be changed, or its precepts disregarded.

## II.

On the main question, the better course is, to extract from the testimony such statements as may fairly characterize the conduct of the defendant, in regard to habitual intemperance and ill-treatment of his wife, so that it may the more readily appear whether or not the latter's charges are well founded.

And we accordingly make the following synopsis from the transcript, viz. :

The defendant has been twice married, his second wife being the present plaintiff, by whom he has no children. He is the proprietor of a small store, of which the plaintiff has been the ostensible head and manager for several years. The mother of his first wife states as a witness, that she lived in the house with the defendant during his first wife's lifetime, and continued to reside with him after his second marriage—with the exception of about eight months—until the plaintiff left the common domicile; and that she has since resided in the premises adjoining.

She states that defendant "was addicted to excessive drink;" slightly ever since she has been acquainted with him, but she has "often seen him drunk. Within the last year or two he has been frequently drunk—very often two or three times a week. Has seen him so that he could not undress and go to bed. Has very frequently seen his wife "help him to bed and undress him."

She says "the habit of drinking has been growing on him ever since he remarried. It is a great deal worse [now] than it was." "From what I have seen," says she, "I should think he has formed a habit of drinking—that he is habitually addicted to intemperance."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"Sometimes he would spend nights at home [but he] was frequently away all night. He would frequently stay till midnight, or after, when he did not stay all night. \*　\*　\*

"Most assuredly I think Mrs. Goss was ill treated by Mr. Goss—in neglect, and quarreling and fussing while drunk, and [in] neglect even while in sickness. I witnessed that frequently, especially during the last two years."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"I have seen him come home very often drunk. I have frequently seen him brought home very drunk by two different persons. \*　\*　\* He comes home oftener drunk than sober."

Another witness, the keeper of a saloon near defendant's store, makes the following statement, viz.:

"I have known Mr. Goss to drink. Sometimes he would take seven or eight drinks in our store, and some days none. Sometimes he bought it by the bottle and sometimes by the drink. He usually brought his bottle in the morning and got 15 cents' worth. I have been at Keller's frequently and seen him drinking. I have seen him drunk quite often. He would come in at Schultz's"—the place at

which the witness was employed—" very nearly every morning and get his bottle filled. He has been drinking that way ever since I have known him. I have known him to drink at night. I have known him to be at Schultz's store often at night. He would generally remain there till 9 or 10 o'clock. I have seen him carried home drunk. * * * He has been drinking about the same ever since I knew him."

Other witnesses testify to having frequently seen the defendant under the influence of liquor. Some testify to having seen him drunk occasionally. Several testify that he has been known for a long time to have been what is termed " a drinking man." But no witness states that his intemperance had *wholly* incapacitated him for business.

On one occasion he was found locked up in his bedroom, in a condition very closely approximating *mania potu*, being possessed of a loaded gun, and in a state of apparent siege by imaginary assassins.

One witness testifies that he has, on several occasions, refused to sell the defendant whiskey, on account of his being drunk; and that he has " known him to have been on a spree for three or four days, and again for a week."

Quite a number of witnesses were sworn and interrogated on the part of defendant, but, in our opinion, their testimony has totally failed to break the conclusive force of that we have quoted above.

There seems to be a strong and well defined parallel between the evidence adduced in this case and that in the case of Mack vs. Handy, 39 An. 491—*i. e.*, on the score of " habitual intemperance."

In that case we said:

" The phrase ' habitual intemperance' scarcely requires an interpretation; it is easily understood. It means the custom or habit of getting drunk. The *constant* indulgence in such stimulants as wine, brandy and whiskey, whereby intoxication is produced. Not the *ordinary use*, but the *habitual abuse* of them.

" The habit should be *actual* and confirmed. It may be intermittent. It need not be continuous, or even of daily occurrence."

In considering the evidence in this case, we think our conclusions in that case are strictly applicable, viz.:

" We feel no hesitancy in deciding that the habitual intemperance and excesses of defendant * * * were such as to render their living longer together as man and wife insupportable to her. And

this is said with due regard for the time honored rule that courts should not lend their aid to effect the separation of spouses * * * except in *extreme cases.*"

In this case there are no children of the marriage, and this relieves us of any embarrassment or hesitancy we might otherwise feel in granting a separation.

In reference to the adjustment of the community rights and obligations of the spouses, we are disposed to think the district judge has fairly considered the evidence and properly decided the case.

Judgment affirmed.