PROVOSTY, C. J.
The decedent died in September, 1917, leaving as her heirs a son, ■Otto Berger, and two grandchildren, Peter St. Amand and Charlotte A. Young. The grandchildren lived with her at her residence •on Napoleon avenue. An inventory was made of the property of the succession, and the said heirs were sent into possession. They had an understanding at first that Peter St. Amand should collect the rents accruing from the leases of the numerous pieces of real estate belonging to the succession, but Otto Berger soon became dissatisfied with this arrangement, and caused these leases to be judicially sequestered; and thereafter the sheriff collected the rents. Beginning at a time not fixed in the record, Otto Berger occupied one room in this Napoleon avenue house. In June, 1918, he moved into the house with his family, and occupied one-half, or one side, of it; the house having a central hall from front to back, and being suitable for occupancy by two families. Miss Young objecting to this joint tenancy, Berger obtained an injunction to restrain her from interfering with him in his side of the house. Shortly thereafter she and her brother vacated the house. This they did on September 9, 1918. The injunction had been served one month previously, on July 3, 1918. Berger continued his occupancy until the house was sold in the course of a judicial partition. At this partition the heirs collated by taking less certain real estate which the decedent had donated to them. On this real estate they had made improvements at their own expense. When the notary came to make the partition, dispute arose on a number of points, for the settlement of which the notary referred the parties to the courts. Dispute arose also over the bill of the sheriff for his services as custodian of the sequestered property, and the bill of his attorney; and over the bill of the auctioneer. Erom the judgment of the trial court on these disputes the present appeal has been taken.
[1] 1. The Youngs claim that Berger occupied, not half, but the whole Napoleon avenue house; and that he should therefore pay rent for one-half of the house. Mr. and Mrs. Berger testify positively that they occupied only half; and the only evidence against this is the statement of the Youngs that in passing by the house they could see the windows open on both sides and the entire parterre kept up. The preponderance of the evidence is against them. And so the trial judge found. •
[2-4] 2. The Youngs claim $900 and Berger $500 for the increased value resulting to the *759 real estate collated by them from the improvements put by them respectively upon the properties at their own expense before the. death of the decedent. The trial court held that these claims were barred by the judgment decreeing the partition. We do not think so. The only issue before the court in this partition proceeding was as to whether these properties should be collated. That issue being decided, all else followed as mere matters of legal consequence. The parties were free to collate by returning the properties to the succession, or by taking less. They chose the latter, and the court in its judgment so recited. This recitation, however, was a mere recitation. It was not the adjudicating of an issue. The parties having elected to take less, the consequence followed that the properties would have to be appraised as of the. date of the death of the decedent, and the court ordered this to be done. Thereby the court did not pass upon any issue. This left the donees free to claim from their “coheirs the expenses which have improved the estate, in proportion to the increase of value which it has received thereby.” C. C. 1256. The time to make this claim was when the partition came to be made before the notary, and this was the time when these parties reciprocally presented their said claims. By sustaining the plea of res judicata the trial court precluded the introduction of evidence for proving the claims. For the purpose of admitting this evidence the case will have to be remanded.
[5] 3. The succession owns a cemetery lot composed of four burying lots of 3x6 feet. The question is whether this lot shall be sealed; or, if partitioned, whether the dividing .line shall run from front to back, so as to give a frontage to each, or from side to side. We know of no authority for sealing this lot, which is the joint property of these heirs. We agree with the trial court that a division by a line from front to back is the fairer.
[6] 4. Berger had sole possession of the Napoleon avenue house from September, 1918, to September, 1920. At some date not fixed during these two years he caused repairs to be made to the hot air furnace, and claims the cost of same, $78.97. They consisted of two new smokestacks, $35; new grate, $16.-12; and labor. The testimony leaves doubtful whether this furnace was not in good shape when he took charge. As he occupied the house during two years free of rent, he should, we think, bear this expense. The trial court erred, therefore, in allowing this claim.
5. And we say the same of his bill of $3.75, for repairs to wires in attic.
[7] 6. On the other hand, the $11.10 paid by Peter Young for light and water, and repair to stove, during the joint occupancy, was for joint account, and should therefore be jointly paid. It was allowed by the trial court.
7. The evidence shows that the two electric fans claimed by the Youngs belong to them, and did not belong to the decedent. So thought the trial court.
8. And we say the same of the Holbrook china set.
9. The $200 claim against Berger for pictures, etc., sold by him, is allowed for $10.50, the amount the things were worth and sold for.
[8] 10. The following items of the auctioneer’s bill are objected to:
(a) The item of $52.50, being for warehouse rent, keeper’s charges, and watchman’s service.
(b) The item $35, labor of arranging, letting, selling, and delivering .movables at sheriff’s warehouse.
(c) The item $740.20, advertising movable and immovable property as being excessive.
(d) The item $130.40 for plans.
We know of no law which requires an auctioneer to render gratis the services mentioned in a, b, and d. They were necessary *761 and inured to the benefit of the estate; therefore they were properly allowed by the trial court.
[9] On item c the newspaper allowed the auctioneer a discount of one-third, or $246.73. This deduction should have gone to the benefit of the succession. Succ. of Cordevoille, 24 La. Ann. 321; Friedrichs v. Friedrichs, 126 La. 705, 52 South. 993. The trial court erred in not so holding.
[10-12] 11. On the sheriff’s bill and that of his counsel the court adopts the views of the learned trial judge, which are as follows:
“4-A. The bill of the civil sheriff for $3,845.-65.
“During the process of the suit for partition, a writ of sequestration was issued in this matter, directing the civil sheriff to take possession of all the property belonging to the estate, and which was sought to be partitioned.
“Under this writ of sequestration, the sheriff took possession of all the property of this estate, collected the rents, and administered same. He now claims for said services the sum of $3,345.65.
“Counsel for the civil sheriff refers the court to article 283 of the Code of Practice. That article states that when the sheriff sequesters the property and administers it, he will be entitled to receive a just compensation for his administration, to be determined by the court; same to be paid him out of the proceeds of the property sequestered, if judgment be given in favor of plaintiff.
“This article of the Code of Practice is superseded by Act 136 of 1880, § 23, which reads that the fees of the civil sheriff for the parish of Orleans shall be as follows; and no fee or charge shall be collected by him for any services not specially provided for in this section. That section provided that he shall receive a commission on sales of property made of 2% per cent., and for commission on moneys realized in mesne or final process the same rates as in case of sales. Therefore the civil sheriff is entitled to receive as his commission 2% per cent, on any moneys collected by him.
“Counsel for the sheriff has referred the court to the case of Jennings v. Houssiere, 118 La. 262 [42 South. 930]. This case has no application for the reason that the legality of the charge was not at issue.
“The opinion reads that through counsel it was consented to leave the decision of the fees due the sheriff, as receiver, to be fixed by the court. In accordance with its estimate ,of the value of the sheriff’s labors and responsibilities, and as those labors had been rendered under the eyes, and to a considerable extent by the direction, of the court, it was, by agreement, determined that there was no necessity to take testimony to establish what his labors and responsibilities had been.
“The court goes on further to say that the plaintiffs alleged in their answer in the district court that the sheriff had no right to make such charges; that after the answer had been filed, however, they consented to the statement of facts before mentioned.
“So the only matter before the court was merely to fix the fees of the sheriff, not in accordance with the statutes, but in accordance with the agreement of parties, and the legality of the charge was never at issue.
“The court therefore concludes that the only charge that the. sheriff is entitled to make is 2% per cent, on the amounts received by him during his administration under the writ of sequestration.
“4-B. The bill of W. O. Hart, Esq., attorney for civil sheriff, is for services rendered by him to the civil sheriff whilst administering the property which had been judicially sequestered.
“An order was rendered in this matter, authorizing the sheriff to employ counsel. The said order was rendered ex parte, and therefore not binding on the parties interested.
“The evidence in this case shows that Mr. Hart was retained by the civil sheriff, as attorney, under a contract by which Mr. Hart binds and obligates himself to render to the civil sheriff all legal services necessary to the sheriff in the administration of his office.
“The court finds no authority, in law or other-wise, for the sheriff to retain counsel in any seizure that may be made, and furthermore, as stated above, his services were rendered under a contract with the civil sheriff for which compensation is to be paid for out of the emoluments of his office.”
The judgment appealed from is therefore set aside in so far as concerns the claims of the heirs for increased value of the properties collated, and the case is remahded for the purpose of trial on these claims; and is also set aside in so far as the claims of Otto Berger for $78.97 and $3.75 for expenses incurred on Napoleon avenue house are concerned ; and the said claims are now denied and rejected; and said judgment is also set *763 aside in so far as it allowed in full the item of $740.20 of the auctioneer’s bill, and is now amended so as to reduce the said item to $493.47, and except as thus set aside and amended the said judgment is affirmed. The cost of this appeal to be paid one-half by the civil sheriff, Louis ICnop, and one-fourth by Otto Berger, and one-eighth each by Charlotte Young and Peter Young.