ROGERS, J.
 

 Plaintiff sued defendant, her husband, for a separation from bed and board on the grounds of cruel treatment and habitual drunkenness. Her demand was rejected, and she has appealed.
 

 We -think plaintiff has established her allegation of habitual drunkenness on the part of her husband. The evidence shows that defendant was the proprietor of a soft drink establishment from about September, 1921, ■ to January, 1923.
 

 Raymond A. Dalton, a first cousin of plaintiff, testified that he helped defendant run his soft drink stand; that intoxicating liquors were sold there, and that defendant was a frequent drinker; that he would get drunk on an average of twice a week, and that he could “smell booze on his (defendant’s) breath all the time”; that since the separation of plaintiff and defendant in April, 1923, he has seen the latter under the influence of liquor seven or eight times.
 

 Marion F. Short, a. brother of plaintiff, who lived on the same premises with the parties prior to their separation, stated that defendant would get under the influence every Saturday night, and sometimes during the week, and that, when witness met him, defendant usually smelled of liquor.
 

 Defendant seeks to discredit or to minimize the effect of the testimony of these witnesses because of their relationship to plaintiff. Relationship to the person in whose behalf they are testifying is a factor to be considered in weighing the testimony of witnesses. Giving full effect to this principle in considering the testimony of these witnesses, we do not find that they were unduly biased in favor of plaintiff, or unduly prejudiced against the defendant. Besides, they are cor
 
 *195
 
 roborated by other witnesses and circumstances.
 

 Mrs. Emma J. Short, the mother of plaintiff, testified that she had seen the defendant very drunk twice. Although living in the same house with the parties, she really saw very little of the defendant. lie would leave the house in the morning before she arose, and would come home at night after she had retired. On one occasion, early in the morning, while she was attending her sick husband, Capt. Short, she heard the front door open. She investigated, going out' on the front porch, where she found defendant in his underwear, very drunk and very sick. The other occasion to which she referred happened shortly thereafter, and occurred at about 11 o’clock in the day, when defendant’s place of business was closed, and he was at home and in bed drunk. The witness also stated what happened on the morning the. parties separated. She testified that she heard her daughter say to defendant:
 

 “I am sick and tired of lying here all night with the door unlocked. I got up this morning at 2 o’clock and locked the door, and you were not in, and you were drunk. He said, ‘I am not drunk.’ She said, ‘You were drunk.’ He said, ‘You are a G-d-liar.’ ”
 

 The witness called out to defendant to stop; that she had heard enough of it. She then went back to her husband, who was an invalid, and who died a short time thereafter. The parties continued to talk for a while, and then defendant left the house.
 

 Plaintiff testified that her husband was drinking before he went into the soft drink business, but after he went into said business he drank very often. He was drunk every Saturday night and Sunday morning, and during the week he would also come home drunk late at night. She testified concerning the occurrences of the morning she and her husband separated, and in the main her testimony on that point is corroborative of that given by her mother.
 

 Plaintiff also testified that defendant, during the marriage, had taken seven or eight pledges before the parish priest to abstain from the use of intoxicating liquors, and that he broke them all; that he carried away the written pledge certificates when he gathered up his papers and left the house. She specifically declared that her husband’s conduct and condition is such that their living together would be insupportable to her.
 

 Defendant was placed on the stand by plaintiff for cross-examination under the act of 1908, and he also testified as a witness in his own behalf. We are not impressed with his testimony.
 

 When interrogated about the pledges he had taken, he admitted that he had taken one prior to his marriage, but denied that he had taken any since his marriage. He was then confronted with a certificate showing that he had taken a pledge before the priest on May 9, 1921. He then reluctantly admitted the correctness of the document. After this admission, he was again asked .how many pledges he had taken since he had been married, and his .answer was, “I haven’t the exact number; about two, I guess.”
 
 '
 
 1-Iis wife testified he had taken seven or eight, and broke' them all. He admitted that he ran a social club in connection with his soft drink stand, but denied that there was any drinking going on there, or that he sold intoxicating liquors in said place of business. This is an improbable story, and is not borne out by the testimony of the witness Dalton, to whom 'we have heretofore referred. Again, defendant swore that he had not been arrested for being drunk on February 11, 1923, at 12:35 a. m. Plaintiff placed on the -stand,' in rebuttal, the two police officers who had made the arrest, and they testified that they had taken defendant in charge on Canal street, in front of the Louisville & Nashville railroad sta
 
 *197
 
 tion, and that he was too drunk to let him go by himself, or to take care of himself.
 

 Defendant called five witnesses to the stand. Mrs. W. S. Stratford testified that defendant’s general reputation is that of a sober man. She stated that she usually retired at about 10 o’clock at night, and did not see defendant when he came home, and she could not testify whether he was drunk or sober. She did, however, see him drunk on one occasion in August, 1923, when there was a disturbance after he and his wife had separated. On this point she contradicts defendant, who denied that he was drunk, or that any disturbance had occurred on that night.
 

 The witness Lyncker saw defendant two or three times a week in the social rooms of a fraternal order of which they were members, or in the neighborhood, and that he was sober. The witness never visited the soft drink establishment, and he only saw defendant between 8 and 10 o’clock at night.
 

 Cassidy Barret is an 18 year old boy, who does not work regularly. He proved a most willing witness for the defendant. He declared that he saw defendant every day at his soft drink stand, and he also saw him about five or six nights every week; that he never saw defendant take a drink; that defendant would close his place of business every night about 11 o’clock and go home, and that he was always sober. Further comment on the testimony given by this witness is unnecessary.
 

 Joseph P. Skelly is a brother-in-law of defendant. He stated that, while defendant was living with his wife, he only saw him about once a week. Since the separation of the parties, defendant has been living in the house of his brother-in-law. The witness testified that he never saw defendant drunk during his marriage, and that since he is living at his house he is “sober most of the time,” and that he had not seen him drunk but once. Mr. Skelly acknowledged that he did not know what time defendant came home, nor in what condition he arrived there, when he was living with his wife.
 

 Harry Dalian, assistant foreman of the Southern Pacific shops, is apparently a friend of the defendant. Defendant had been working under him for about two months as a machinist, making about five days out of the week. He testified defendant is attentive to his work, seldom laying off; that he makes about as much time as the average machinist, and is generally regarded as a sober man. He admitted that on one occasion he took the defendant home drunk. This was before defendant had engaged in the soft drink business. After he entered that business,^ the witness only saw him about once a week during the daytime, and then for only about a half an hour at a time. He does not know what defendant did at nighttime, and was not in a position to state whether he got slightly intoxicated during the week and got very druni on Saturday night.
 

 In Mack v. Handy, 39 La. Ann. 491, 2 So. 181, this court said:
 

 “The phrase ‘habitual intemperance’ scarcely requires an interpretation; it is easily understood. It means the custom or habit of getting drunk;. the constant indulgence in such stimulants as wine, brandy and whisky, whereby intoxication is produced; not the ordinary use, but the habitual abuse of them.
 

 “The habit should be actual and confirmed. It may be intermittent. It need not be continuous, or even of daily occurrence.”
 

 This interpretation of “habitual intemperance” has been approved and followed in Williams v. Goss, 43 La. Ann. 868, 9 So. 750, and De Lesdernier v. De Lesdernier, 45 La. Ann. 1364, 14 So. 191.
 

 We think the evidence in this ease brings it well within the rule announced in the cited cases, and tha^ plaintiff is entitled to the relief for which she prays.
 

 For the reasons assigned, the judgment appealed from is annulled and set aside, and
 
 *199
 
 it is now ordered that there be judgment in favor of plaintiff, Mrs. Gladys Short, wife of John T. Morrison, and against defendant, said John T. Morrison, decreeing a separation “a mensa, et thoro” between them, and granting to plaintiff the care, custody, and control of their minor child, Geraldine Morrison. Defendant to pay all costs.
 

 BRUNOT, J., dissents.