171 So. 843

**Succession of WOOD.**

**No. 33587.**

**Jan. 4, 1937.**

Porteous, Johnson & Humphrey and F. Carter Johnson, Jr., all of New Orleans,

for Porteous, Johnson & Humphrey and F. Carter Johnson, Jr.

Azzo J. Plough, of New Orleans, and James F. Galloway, of Gulfport, Miss., for Wilmer R. Wood, administrator.

Legier, McEnerny & Waguespack, of New Orleans, for Dr. Mabel F. Wood.

FOURNET, Justice.

Several oppositions were filed to the first provisional account filed by the administrator of the succession of Dr. Wallace Wood, Jr., and he has appealed from the judgment of the lower court amending the account in the following particulars: (1) By increasing the amount due Messrs. Porteous, Johnson & Humphrey for legal services rendered the administrator from $300 to $1,-000; (2) by placing on the account F. Carter Johnson, for notarial services rendered in the sum of $188.34; (3) charging the administrator and requiring him to pay into the succession account the sum of $30 for rent from June 22, 1933; and (4) reducing the amount of the claim of James F. Galloway from $300 to $200.

Porteous, Johnson & Humphrey and F. Carter Johnson have answered the appeal, asking that the judgment of the lower court be amended so as to allow them the original amounts claimed.

We shall consider first the claim of Porteous, Johnson & Humphrey, for legal services rendered the administrator.

The court said, in the case of Dinkelspiel & Hart v. Pons, 119 La. 236, 43 So. 1018, that: "Determining the fees for services of an attorney is a matter of great delicacy,

and a court in fixing them must be guided by a conscientious estimate of their value. * * * Expert opinion, in such cases, is a guide, but is not necessarily controlling on the court. * * * Where the nature and extent of the services are shown by the record, it is the duty of the court to bring to bear its knowledge of the value of the services of counsel."

In the case of Peltier v. Thibodaux et al., 175 La. 1026, 144 So. 903, 904, this court said that: "Each case is decided according to the particular or peculiar facts and circumstances presented."

In the case of Hunt v. Hill, 138 La. 583, 70 So. 522, 526, after reviewing all the jurisprudence on the question of fixing attorney's fees, this court stated: "It appears from the foregoing review of our jurisprudence that the attorney's fees allowed in succession matters have ranged from 2 to 5 per cent. of the amount of the inventory," and the court concluded that "5 per cent. of the appraisement of the property involved should be adequate compensation for the advice given and skillful and expeditious services rendered." But the court said: "This is more than we would consider reasonable if we had not the benefit of the opinion of the six eminent lawyers who testified as experts in this case and the district judge's approval of their estimate."

In Maloney v. Schülingkamp et al., 151 La. 497, 91 So. 852, 853, the attorney for the succession claimed $2,181.35, 5 per cent. of the amount of the inventory, as a fee for his services to the succession. The lower court gave judgment fixing his fee at

$1,000, but on appeal this court increased the amount to $1,500, saying:

"So far as we can see, his professional services were valuable and in conformity to what they should have been in the circumstances. Had he been allowed to complete the purposes of the employment, the fee claimed would, under all the evidence and circumstances of the case, have been fair and reasonable. Since he was not allowed to continue, through no fault of his own, and there only remained about one-fourth of the work to be completed, we think the sum of $1,500 would be commensurate with the work performed."

In the case at bar, the opinion of the experts who testified in support of the claim of Messrs. Porteous, Johnson & Humphrey is at great variance with the testimony of the experts who testified in opposition to the claim, and since the trial judge did not give any reasons for fixing their fee at the sum of $1,000, we must therefore rely solely upon the evidence in the record. A review of the record reveals that, in addition to the simple, ordinary, and perfunctory procedure for which they are entitled to a fee on the basis of the inventory, we find that there was a serious contest over the ownership of fifty shares of stock of the Homeseekers Homestead Association, of the par value of $100, standing in the name of Dr. Wallace Wood, Jr., and claimed by Alviro Quiroga. The trial of the rule testing the ownership of that stock lasted three and a half days, in addition to the necessary preparation for the trial. That matter was previously before us on appeal after opponents were out

of the case. See Succession of Dr. Wallace Wood, Jr., 182 La. 960, 162 So. 741. The judge of the lower court, during the trial of this case, commented upon the services rendered by the attorneys on the Quiroga rule, saying: "I am certain that no lawyer could have worked more energetically or competently in that case than did Mr. Johnson — or Mr. Porteous."

The trial judge, in fixing opponents' fee at $1,000, evidently took into consideration the services rendered by them in the trial of the case to determine the ownership of the homestead stock. Present counsel for the administrator in argument before us stated that the services rendered by opponents in that trial, which lasted three and a half days, were not worth more than $100 a day and suggested that the court render judgment accordingly. We have the record in that case before us, and considering the fact that in addition to trying the case, counsel evidently spent considerable time preparing for the trial, we think a fee of $500 is reasonable, fair, and commensurate with the services rendered.

A fee of 5 per cent. of the amount of the inventory for bringing the succession to a conclusion amounts to $1,441.70. Opponents, through no fault of their own, after having completed about one-third of the work necessary to close the administration, were requested to withdraw as counsel for the administrator, and for their services up to that time we do not think a fee of $500 is excessive.

The trial judge fixed opponents' fee in globo at $1,000. The administration of the succession was under his supervision and

the rule to test the ownership of the homestead stock was tried in his court, and therefore he had an excellent opportunity to estimate the value of the services rendered by opponents in these matters. We are therefore of the opinion that the amount allowed is neither inadequate nor excessive.

■ Relative to the opposition of F. Carter Johnson, Jr., as notary public, the record shows that pursuant to an order of the district judge he took an inventory of the assets of the estate which showed a total appraisment of $28,834, for which he claims a fee of $288.34, being one per cent. of the amount of the inventory. The trial court allowed $188.34. Our attention, however, is called by the administrator to section 10 of Act No. 101 of 1870, which provides that:

"The Recorders and Notaries Public shall be entitled to demand and receive at the time the services may be performed, the following fees of office, and no more * * *:

"* * * for making inventories of successions or other property out of office, fifty cents per hour, provided not more than twelve hours per day shall be charged, together with twenty cents per hundred words for the proces verbal of the inventory, and recording it, and twenty-five cents for the certificate and seal thereon; for making inventories in office there shall only be charged twenty cents for every hundred words for taking and recording the same, and twenty-five cents for the certificate and seal * * *."

The opponent, however, contends that the law is obsolete for the reason assigned by the trial judge who stated, "it is a law that is absolutely honored in its breach rather than its observance." He calls our attention to the fact that by Act No. 22 of the Fourth Extraordinary Session of the Legislature of 1935, the Legislature, being aware of that fact, amended section 10 of Act No. 101 of 1870 by providing that fees for such services "shall be fixed in the discretion of the Court out of which the order for such notarial service is issued." In this respect we must disagree with opponent and the trial court, because under the express provisions of the act of 1870, the notary is entitled to demand and receive at the time he performs the services the fees therein fixed *"and no more."* (Italics ours.) Succession of Czarnowski, 151 La. 754, 92 So. 325; LaSalle Realty Co. of Louisiana, Ltd., v. City of New Orleans, 172 La. 903, 135 So. 912.

■ As to the opposition of Dr. Mabel Fontaine Wood, seeking to compel the administrator to pay rent for the use of Apartment A, the record shows that Dr. Wallace Wood, decedent, and his widow had lived in Apartment A from November, 1932, until the death of decedent, April 17, 1933. Thereafter the widow continued to occupy the apartment until Wilmer Wood, the decedent's son and opponent's stepson, qualified as administrator, when he immediately made demand on opponent, in writing, to pay $60 a month rent for the apartment or to vacate the same at once, which she did on June 22d. The administrator and his wife immediately moved into the apartment and have been occupying it ever since. It is the contention of Dr. Mabel Wood that

the apartment belongs to the community and she is entitled to one-half of the revenues thereof after the expenses of operation are paid, and therefore the administrator should charge himself with the rental value of the apartment, $55 a month, from June 22d, 1933. The trial judge, after hearing the evidence on the opposition, directed the administrator to charge himself and pay into the succession account the sum of $30 per month from June 22, 1933.

A review of the testimony shows that the property at 624 Audubon street is a five-apartment building and that Apartment A was the largest. At the time the administrator took possession of the apartment, the apartment nearest the size of Apartment A was renting for $55 a month and the other three were either being rented or offered for rent at $45 a month. These apartments were rented furnished, with gas, electricity, and water, to the tenants, included in the rent. The administrator reduced the rent $10 a month on all the apartments but required the tenants to pay for the gas, electricity, and water they used, thus making the large apartment rent for $45 a month and the smaller ones at $35, or an average of approximately $40 a month.

Counsel for the administrator contends that some one must be on the premises to look after the upkeep and care of the apartments, and that by doing this work himself he has dispensed with the additional cost of hiring a person to do this work. The trial judge, in fixing the amount of the rent to be paid by the administrator, evidently took that matter into consideration, and we think the amount found by him under the circumstances is fair and we see no good reason to disturb the same.

The administrator listed Mr. James F. Galloway, attorney, for certain services rendered to the decedent prior to his death for a fee of $300. This item was opposed by the surviving widow and the trial court reduced the amount to $200. We conclude, after reviewing the evidence, that the trial court correctly appraised the services of Mr. Galloway.

For the reasons assigned, the judgment of the district court, in so far as it fixes the fee of Mr. F. Carter Johnson, Jr., in the sum of $188.34 is amended, and it is now ordered, adjudged, and decreed that the trial court fix the fee of F. Carter Johnson, Jr., according to section 10 of Act No. 101 of 1870, and as thus amended, the judgment is affirmed; costs to be borne by the succession.