On September 25, 1942, in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, Mrs. Susie Lee Connerly DeBlanc filed suit for separation from bed and board against her husband, St. Denis Joseph DeBlanc, Jr. Her attorneys were Messrs. Hugh M. Wilkinson, A. Miles Coe and John D. Lambert. She prayed for provisional and permanent care and custody of their infant son, issue of the marriage, for alimony pendente lite for herself and the said child, for an injunction restraining her said husband from disposing of any of the assets of the community, and that inventories be made of all assets of the said community.
Orders were issued that an inventory be made in each parish in which there was any property of the matrimonial community and the court fixed alimony pendente lite for plaintiff and the infant child and awarded the custody of the child to the said plaintiff.
On November 4, 1943, judgment granting a separation from bed and board was read, rendered and signed. *Page 621 
Inventories were taken in the three parishes in which there was property of the community. The inventory in the Parish of Orleans was taken by John D. Lambert, notary public, with the assistance of Lawrence Marrero and John C. Holderith, appraisers. The inventory in the Parish of Jefferson was taken by Frank H. Langridge with M.J. Pitrie and Thomas Rhodes, appraisers. We are not concerned with the inventory which was taken in the Parish of St. Helena.
The inventory taken in Orleans Parish shows that the assets in that parish were appraised at $33,686, and the inventory taken in the Parish of Jefferson shows that the assets in that parish were appraised as $15,863.05.
During the early part of November, 1942, there was a reconciliation of the parties.
On December 8, 1942, Messrs. Wilkinson and Coe who had represented Mrs. DeBlanc in obtaining the judgment of separation and the incidental orders, etc., called upon Mr. and Mrs. DeBlanc for payment to them of a fee of $2,000 and for the payment of certain costs, with some of which we are not concerned, and for the payment also of the fees of the notaries and appraisers mentioned above. They demanded the following amounts: For Frank H. Langridge, notary in Jefferson Parish, $158.63; for M.J. Pitrie and Thomas Rhodes, appraisers in the Parish of Jefferson, $39.65 each; for John D. Lambert, notary in Orleans Parish, $336.86; for Lawrence Marrero and John C. Holderith, appraisers in Parish of Orleans, $84.21 each.
On December 11, 1942, Mr. and Mrs. DeBlanc, through their then attorney, Mr. E. Howard McCaleb, Sr., advised Messrs. Wilkinson and Coe that Mr. and Mrs. DeBlanc objected "to each and every item of the foregoing statement as due by them or either of them for the amounts therein set forth."
On January 18, 1943, Messrs. Wilkinson and Coe filed this rule against Mr. and Mrs. DeBlanc calling upon them to show cause why the charges mentioned above should not be taxed as costs and ordered paid out of the community which had formerly existed between Mr. and Mrs. DeBlanc. In this rule Messrs. Wilkinson and Coe stated that they were attorneys for "plaintiff in the above and foregoing cause." To this rule respondents filed exceptions of misjoinder of parties and of causes of action, and in their exception maintained that "hearing of this rule should be limited to the notarial and appraisers' fees * * *". With these exceptions, respondents also filed answer to the rule in which they contended that the fees were excessive. They made no other contentions.
When the rule came on for trial the court was advised that all of the charges except the notarial fees and the appraisers' fees had been adjusted and that the only matters before the court were the question of whether Mr. and Mrs. DeBlanc should be held liable for these fees, and whether the amounts charged were correct. After a trial the rule was made absolute. Mr. and Mrs. DeBlanc have appealed.
Counsel for respondents contends in the first place that Messrs. Wilkinson and Coe are not now the attorneys for Mrs. DeBlanc and that, therefore, in bringing the rule they incorrectly designated themselves as her attorneys. He maintains that if they are her attorneys and are bringing this rule against her as well as against her husband, there is an anomalous situation in that in effect Mrs. DeBlanc is suing herself. Counsel says that we find "actor and adversary combined in the same person."
He is not correct in this. These attorneys did not allege that in bringing the rule they were acting as the attorneys for Mrs. DeBlanc. They merely identified themselves as the attorneys who had represented her in bringing the suit for separation. In the main proceeding, as attorneys for Mrs. DeBlanc, they had provoked the appointment of the notaries for the taking of the inventories and, having been responsible for these appointments, they felt it their duty to call to the court's attention the fact that the fees made necessary by those appointments had not been paid. An attorney is an officer of the court and it is his duty to call to the attention of the court any matter which the court is entitled to know. An attorney who has provoked the appointment of a public official should call the court's attention to the fact that that public official has not been paid.
Counsel contends that the rule shows no cause of action since it appears that the parties have been reconciled. He argues that where there has been a judgment of separation from bed and board and the parties have become reconciled, since the judgment of separation becomes a nullity, *Page 622 
a rule to tax as costs fees of public officials, whose services were rendered in connection with the obtaining of the judgment of separation, exhibits no cause of action.
Counsel calls attention to Art. 152 of our Civil Code which provides that "the action of separation shall be extinguished by the reconciliation of the parties * * *." And counsel also cites Succession of Liddell, 22 La.Ann. 9, in which it is held that "If a reconciliation takes place after the decree of separation, the judgment is a nullity." See Syllabus No. 2. We have no doubt that what the framers of the Code meant and what the Supreme Court meant is merely that as between the parties the judgment of separation is no longer in effect and may not be used as a basis for a new suit for divorce. It cannot be meant that because the judgment is a nullity as between the parties, no persons who took part in obtaining it may make claim for fees for services rendered.
As a matter of fact such a judgment is not a complete nullity. It has certain effects; for it dissolves completely and forever the community of acquets and gains. See Succession of LeBesque,137 La. 567, 68 So. 956, 957, in which the Supreme Court, after recognizing the fact that a decree of separation from bed and board dissolves the community, held that reconciliation did not re-establish the community. The Court said: "* * * there is no law which says that a reconciliation of the spouses superinduces a partnership or community of acquêts or gains, as is superinduced by marriage. The court is without authority to legislate upon the subject; * * * it has been twice decided that the community of acquêts and gains is not re-established by the reconciliation of the parties, * * *." The two decisions referred to are Ford v. Kittridge, 26 La.Ann. 190 and Crochet v. Dugas,126 La. 285, 52 So. 495.
The public officials whose services were rendered in connection with the obtaining of the judgment of separation are entitled to be paid for their services even though, as between the parties, the judgment has been nullified by their reconciliation. We therefore conclude that the rule to tax charges for such services as costs exhibits a cause of action.
The contention is made that in no event may the wife be held liable for any of these charges. If the community still existed it would be liable for the charges but it has been dissolved by the judgment of separation. See Articles 123, 136, 155, La.Civil Code of 1870; Williams v. Goss, 1891, 43 La.Ann. 868, 9 So. 750; Conrad v. Conrad, 1930, 170 La. 312, 127 So. 735; Butler v. Bolinger, 1931, 16 La.App. 397, 133 So. 778; Cf. Brown v. Tauzin, 1936, 185 La. 86, 168 So. 502; Succession of LeBesque, supra; Reichert v. Lloveras, 188 La. 447, 177 So. 569; 1 La.Law Review 422. In fact "* * * it is realized that there is at present no recognized mode of re-establishing it." La.Law Review, Vol. 1, p. 427. Since the community is dissolved and the wife is entitled to her one-half of the assets, she should be liable for her share of these debts which would otherwise be due by the community.
Counsel for Mr. and Mrs. DeBlanc seems to base his contention that the fees of the two notaries are excessive largely on the fact that in Succession of Wood, 186 La. 181, 182, 171 So. 843, 845, the Supreme Court held that the notary who had taken the inventory might not make a greater charge for his services than is permitted by Sec. 10 of Act 101 of 1870. This section of the said statute provides for "the following fees of office, and no more":
"`* * * for making inventories of successions or other property out of office, fifty cents per hour, provided not more than twelve hours per day shall be charged, together with twenty cents per hundred words for the proces verbal of the inventory, and recording it, and twenty-five cents for the certificate and seal thereon; for making inventories in office there shall only be charged twenty cents for every hundred words for taking and recording the same, and twenty-five cents for the certificate and seal * * *.'"
While the reported opinion in Succession of Wood does not show when that inventory was made, an examination of the record in the files of the Supreme Court shows that it was made in 1933, which, of course, was prior to the passage of Act No. 22 of the Fourth Extra Session of 1935. This Act of 1935 very effectively repeals the provisions of the Act of 1870 and provides that the fees of notaries public for "making inventories of successions or other property under appointment of the Courts in this State shall be fixed in the discretion of the Court out of which the order for such notarial service is issued." *Page 623 
When the matter was argued before us, counsel for the respondents in rule for the first time made the contention that this Act of 1935 is unconstitutional in that its object or purpose is not expressed in its title. The point sought to be made is that though the title declares that it is "an Act to define and regulate the costs of the Clerks, Sheriffs, Recorders and Notaries Public, throughout the State of Louisiana * * *" the Act itself does not define or regulate but permits the courts to exercise discretion in fixing such fees. In other words, he says that on reading the title one would receive the impression that the purpose of the act is to define or to fix the fees, whereas the statute itself permits the judges to do so. This question was not presented in the pleadings and was not argued in the District Court. In Stovall v. City of Monroe, 199 La. 195, 5 So.2d 547, 552, the Supreme Court said: "This Court will not consider a constitutional question unless it has been raised by the pleadings. * * *" This rule is well established in Louisiana. See State v. Ross, 144 La. 898, 81 So. 386.
Though counsel has not discussed the question of his right to challenge in this court, and for the first time, the constitutionality of the statute of 1935, we have given thought to the possibility that there may be exceptions to the above quoted rule. For instance, where the party who challenges the constitutionality of a statute was not required to file any pleadings at all and therefore could not raise the question in the pleadings; where the party who finds it necessary to attack a statute as unconstitutional is the respondent in a rule such as this, in which a return is not required at all. And we have thought too that another exception may possibly be found where, although in the pleadings there has been no attack on the constitutionality of the statute, the position assumed by one of the parties could be assumed only if the statute should be held to be unconstitutional. For instance, in Meyer v. Board of Trustees, of Firemen's Pension Relief Fund for City of New Orleans, 199 La. 633, 6 So.2d 713, though the challenge to the statute was not expressly presented in the pleadings, the Supreme Court considered and discussed the constitutionality of the statute which was involved. We do not think that either of these exceptions permits counsel here, for the first time, to attack the statute of 1935. Although respondents may not have been required to file any return at all to the rule to tax costs, still they did file such return and in it they made no attack at all on the Act of 1935. Then, too, although in the Meyer case the constitutionality of the pertinent statute was considered in spite of the fact that that question was not raised in the pleadings, it is made clear that the question was raised in the District Court as soon as the circumstances of the trial made it necessary. Note the following at page 640 of 199 La., page 715 of 6 So.2d: "* * * Counsel for the plaintiff then stated to the court that if the construction placed upon Section 3 of the statute by the defendant that the court had no jurisdiction of the case were accepted, it would make that part of the statute unconstitutional * * *." We conclude that we cannot now consider the contention that the Act of 1935 is unconstitutional.
When we come to consider the two inventories, we find that beyond any question the one taken in the Parish of Jefferson involved a great deal more time and care than did the one taken in the Parish of Orleans. The Jefferson inventory required twelve and a half pages and in it are listed more than two hundred separate items each of which required a separate appraisement and a separate listing. That inventory also included two pieces of real estate. The Orleans inventory, on the other hand, required but two and a half pages and, except for ten items of personal property and one item listed as "Interest in Arcadian Amusement Company, $15,000.00," includes nothing but actual cash and United States Government Bonds. Surely little effort was necessary to take such an inventory. While the total value of the property in Orleans Parish is fixed at $33,686, that figure in no way serves as a basis for the fixing of the notarial fee. For the taking of such an inventory a fee of $336.86 seems to us to be tremendously greater than it should be. $100 is, we think, ample compensation for the notary. On the other hand, the allowance of $158.63 to the notary in the Parish of Jefferson, in view of the labor involved, appears to be not greater than is justified.
When we come to consider the question of the amount to be allowed to the appraisers, we find no statute which controls the fixing of such fees. Counsel for respondents suggests that, though it is *Page 624 
not controlling, we should be guided by Act 33 of 1870, which provides that appraisers who assist in the taking of inventories in succession proceedings shall be paid only $4 for each "vacation." In each of the two inventories here there was but one vacation and therefore if we felt that we should be influenced by that statute each appraiser would be entitled to $4 and no more. Obviously, such a fee would be inadequate. In the Jefferson inventory, the work involved was considerable for the reasons which we have already discussed in connection with the fee of the notary public. We think that for the work done there the amount allowed to each appraiser, to-wit: $39.65, was not excessive. However, for the reasons which we have also already given, we find that there was little work connected with the appraisements made in the Orleans Parish inventory and we think that $25 to each of the appraisers is adequate compensation.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended to the extent that the fee of John D. Lambert, notary public in the Parish of Orleans, be and it is reduced to $100, and that the fees of Lawrence Marrero and John C. Holderith, appraisers, be and they are reduced to the sum of $25 each, and that in all other respects the judgment appealed from be and it is affirmed, all costs to be paid by respondents.
Amended and affirmed.
McCALEB, J., takes no part. *Page 668