The opinion of the court was delivered by
McEnery, J.
The deceased left the following will: “ I give to my Dear wife Bettie Allen all my corporal movables such as furnature, bedding Linin silver plate, China ware &c. all my stock of cattle all my horses and Carriages she is to oeupy The Homestead without reservation or distinction till the plantation is disposed of I authorize her to take immediate possession of the same for her own use without Inventory or Controle of any kind. My debts are small I have no children nor forced heirs. I wish the tribunals of La to have nothing to do with my Estate unless somting arises that that can not be avoided I do this for econimy.
“ In addition to the above gifts I give to my dier wife Bettie Allen four thousand Dollars worth of City of New Orleans Bonds four per cent, interest Bearing Bonds, with Coupunds. I give her also two thousand Three hundred and fifty Pounds Sterling in the hands of Bearing Bro &c limited more or less (see their ac. currents in chst) .
“This will be ovr fourteen thousand Dollars for a house I gave her at our marriage not recorded but good. I give to my Wife Bettie Allen one-half of my Rienzi Plantation and one-half of all tools mules &c the names of my Executors &c will be named hereafter. My Executors shall have from one to five years to Sell and clos up the estate as I fear property will be verry low and dull. They can sell part cash part on time 8 per cent. Interest with Vendors lean I will that my wife do have one-half of everry thing belongin to Rienzi, Except the Claim due me by the U. States that and other Property I will speak of further on.
“ I appoint as my Executors Ogden Smith and W F Collins residing on Rienzi plantation I also appoint Mrs Bettie Allen Executrix. I give them ful power to sell Rienzi plantation When Ever they find *1039 a good offer all the property there belonging. When it is sold half of all the proeed Cash Notes &e is to belong to my wife Bettie Allen The other hafe will be spoken of hereafter As I fear property will be very low I give my Executors five years to work for a good price in the Meantime That they are waiting to sell, the place can be rented or worked so as to pay all Taxes and other Charges, any over that go to Mrs Bettie Allen’s credit. The other half of Rienzi and and a claim I hold against the Government of the United States for army supplies I think is about one hundred thousand dollars These two amounts or halfs I intend to give to the famlies of my Brother Thomas H. Allen’s four children R. H. Allen Jr for his famly’s use Thomas H Allen Jr for his wife and children Harry Allen for his wife and children Mrs. Mary Louis wife of J. O. Leatham of New York city.
“ And to the five children of my Sister Oynthia A. Smith Gaston Smith, Fred W. Smith Jr. Mrs. Nellie Houchens, Ogden Smith & Thomas A. Smith. My three neiees Mrs. Jennie Boyle, Mrs. Bettie De Berny, Mrs. Ellen B. Baker have Received Each five hundred Dollars I will that they receive five hundred dollars more in Gash and have no interest in any other Claim, my Brothrs firm in Memphis Tenn owes me $17,369 Dollars Seventeen thousand three hundred and Sixty nin dollars loaned them he having surrendered all his Estate to his Credited Which he thinks will pay all he ows. I thirefore Give this sum $17,369 to The wife of of my Brother for her self and all the dividends on that amount.
“To Mrs Sallie Cragin I give five hundred dollars to Walter Collins I give two hundred dollars. To my faithful servants Lizzie Harrison and Mat Dickerson I give one hundred and fifty dollars Each.
“To my sister Myra Turner’s two sons John B and William Turner I give John B His note for three hundred dollars deducting Interest, to Will I have given as much as I intend in Cash.
“I hold Fred W. Smith note for five hundred dollars this note Can be given him without counting Interest as part of his share heretofore given him.' My gold Watch and chain I give to my namsake R. H. Allen, son of Thomas H. Allen Jr of Memphis Tenn to be given him when of age.
“Codicil No. 1 I will that Mrs Cragin’s two small boys shall be given an English Education at Expense of the Estate I will that my *1040 Executors shal not give bond as I think them honest men I prefer they pay off the cash donations as soon as posible.”
A motion has been filed by the executor, Ogden Smith, who is one of the heirs, to dismiss the appeal from the judgment adverse to the Allen heirs, taken by them.
In the Succession of Ames, 33 An. 1318, this court had occasion to notice the distinction between the functions of an administrator and an executor, giving to the latter, when a creditor, the right of appeal from a judgment adverse to his interest. The reasons assigned for the judgment in that case are conclusive. The executor is the mandatory of the deceased, and a mediator between the parties having an interest in the succession. He represents creditors and heirs, and it is his duty to see that the will is executed according to the wishes and desires of the testator. He is interested in the proper distribution of the funds, and it is sacred duty to see that they are distributed among those whom the testator intended should be beneficiaries. Representing all parties, he has an undoubted right to appeal for the common benefit of all the parties.'
The Succession of Nicholson, 5 An. 359, is directly applicable to this case. In that case the testator left a sum of money for “the support of asylums in the faith of the Protestant religion especially devoted to the care of aged persons.” There was no institution in the city of New Orleans where the bequest was to be expended, answering to the description in the testament. The St. Anna Asylum devoted to the relief of destitute and helpless children claimed the legacy, as the only institution in the city of New Orleans coming near the terms and conditions of the will. The judgment of the lower court was in favor of the St. Anna Asylum. On appeal by the executor the judgment was reversed. In this case the court said: “ The will is his (executor’s) mandate. He has no power and is subject to no duty except within its terms and conditions.” The executor, therefore, has the right to appeal from a judgment interpreting the will, which he thinks is contrary to the intentions of the testator. In oppositions to the distributions of a fund there are as many adjudications — separate judgments as there are oppositions and the party aggrieved must appeal for relief, and unless he does so this court will not amend the judgment as between the appellees made so by the operation of the appeal, except so far as the judgment between immediate parties to the appeal may affect indirectly *1041 their interests. By the appeal of the executor from a judgment adverse to his professed distribution of funds as he interprets the will, all the beneficiaries, legatees and heirs are necessarily immediate appellees.
The motion to dismiss is therefore denied.
The executors could not agree on an interpretation of the will, and there were controversies between .the legatees and heirs among themselves and with the executors.
Two of the executors, Mrs. Allen and Oollins, filed a provisional account, proposing to settle the bulk of the estate and distribute the funds on hand, and await a . further realizing of assets and to make a future and final distribution. The executor Smith filed a final account.
Oppositions were filed by the executors to the accounts of each, and there were numerous other oppositions by the heirs.
Oollins and Mrs. Allen, executors, propose to turn over to the latter, the residuum of the estate. The heirs, including the executor, Ogden Smith, oppose the account, on the ground that as to the residuum the testator died intestate, and it should be distributed among those to whom the law gives it. Mrs. Allen, claiming the residue, opposed the account. The division of the plantation is contested between the children of Thomas H. Allen, and the children of Mrs. Smith, brother and sister of the deceased. There were four Allen and five Smith heirs. Hence the contention of the former, that one-half of the plantation absolutely should go to them, as they deny the bequest to the Smith heirs; and that if they are entitled'to a part of the plantation as legal heirs, that the half of the plantation should be divided per stirpes and not per capita.
The executors concur that each of said heirs should receive one-ninth of the half of the plantation. Oollins and Mrs. Allen, executors, propose to pay Mrs. Cragin for her boys, a sum sufficient to educate them. Smith, the executor, and one of the heirs, opposes this item in the will, because of its uncertainty. The executor, Smith, differs with the other executors as to the disposition of the crop of 1894, the former contending that the proceeds should be turned over to the heirs as a part of the estate undisposed of by the testator, and the three nieces named in the will claim a part of the residuum as heirs. Their quality as legal heirs is denied by the executors. Two of them agree that they are entitled each to five *1042 hundred dollars; the others that this sum must be distributed among them.
The Turner heirs oppose the claim of the three neices, and, as a consequence of the rejection of their claim, they allege they are entitled to interest, as part of the residuum, to the extent of one undivided third jointly. They oppose the classification of the old iron, coal, corn and hay, as immovable by destination, and there are many other items in the account of the executor Smith objected to-by them.
The District Judge consolidated the two accounts and the oppositions filed, and treated them as one proceeding.
The judgment of the District Court was that the bequest to Mistress Bettie Allen of all testator’s corporal movables did not entitle her to the money found in his house at his death, nor to the money in bank, nor to the sugar on plantation at testator’s death, after the payment of the special legacies and debts of the estate, and that-these amounts formed an unwilled portion of the estate to be distributed to the heirs-at-law of the deceased, leaving out the heirs-that were disinherited, the court deciding that the testator’s three nieces were disinherited, with the exception of a legacy of five hundred dollars left to each of them.
The lower court further sustained the legacy to give Mrs. Oragin’s two small boys an English education, fixing the amount to be paid her; and that the Rienzi plantation was devised one-half to Mistress Bettie Allen, and the other half was to be divided into ninths, one-ninth going to each of the Allen heirs, and to each of the Smith-heirs.
It further holds that the crop of sugar and molasses made on the Rienzi plantation in the year 1894, which Ogden Smith proposed to-account for (though unsold), could not be accounted for till sold, but that, as the question of its distribution was raised, it should be divided among the devisees of the plantation in the proportion they took said plantation, and not to Mistress Bettie Allen, as she contended for in her opposition.
The lower court upheld the payment of attorney’s fees, as proposed by Ogden Smith, executor.
And, finally, it decided that the account of Ogden Smith, executor, was not a final account, but that the final account must be recast, and that the question of the distribution of the bounty money due *1043 by the United States Goverment for the sugar made during the year 1894, should be left open for decision when the money was collected and proposed to be distributed by the executors.
From this judgment the executors, W. F. Collins and Mrs. Bettie Allen, the Allen heirs and Mrs. Bettie Allen, personally obtained orders of appeal.
The first question presented is, is Mrs. Allen appointed residuary legatee under the will?
Where general expressions stand immediately associated with less comprehensive words, they have been sometimes restricted to articles ejusdem generis; the specific effects being considered as denoting the species of property which the larger term was intended to comprise. Jarman on Wills, p. 362, Vol. 2.
The circumstance of a specific or pecuniary legacy being given to the one legatee, or of the general bequest being followed by particular portions of the personal property to other persons has been considered to favor the supposition that such bequest was not to comprise the general residue. Id., p. 354.
And it has been often, we may say invariabiy held, that a general description of property, or description of the class or kind, preceded or followed by words of narrower import, if the bequest is not residuary, will be confined to species of property of same kind with those previously described. The adoption of the more comprehensive meaning would have the effect of rendering the superadded expression nugatory, and make the testator employ additional language, without any additional meaning. Jarman on Wills, 356; 15 Ind. 326; 2 Bl. Comm. 384; Lartigue et al. vs. Duhamel’s Executor, 4 N. S. 665.
The confection of the will shows that the testator was ignorant of grammar and orthography, and the most elementary rules of com - position. His uncouth language, inapt and confused expressions must be overlooked and construed into logical conclusions and consistent expressions in the effort to ascertain his intention, which must govern, unless the thing to be done is opposed to some inflexible rule of law.
The rules for the intepretation of testaments are: (1) The technical import of words is not to prevail over the obvious intent of the testator; (2) when technical words are used by the testator, or words of art, they are to have their technical import, *1044 unless it is apparent that they were not intended to be used in that sense; (3) the intent of the testator is tobe determined from the whole will; (4) every word shall have effect if it can be done withoht defeating the general purpose of the will, which is to be carried into effect in every reasonable method. C. C. 1712. Succession of Blakemore, 43 An. 850; State of Louisiana, etc. vs. Executors of McDonogh, 8 An. 171; Williams vs. Western Star Lodge, 38 An. 620; Succession of Bobb, 41 An. 250; City vs. Hardie, 43 An. 253; 16 Ind. 479; 11 Pick. 257-378; 13 Ind. 413; 2 Met. (Mass.) 191-194; 12 Johns 389; 8 Ind. 3, 306; 5 Mass. 500; 5 Denio, 646; 3 Pick. 362; 2 Md. 82; 1 Jarman Wills, 404-412.
In the will he gives to his wife all hie corporeal movables, and follows this general disposition by a specific enumeration of the immovables, such as furniture, bedding, linen, silver plate, chinaware, etc. All of his stock of cattle, horses and carriages. It will be noticed that after the designation of furniture, etc., the sentence stops, and then in another sentence he disposes of a different species of corporeal movables. There is no ambiguity in this part of the will. No construction can be put upon the language than that the testator intended to limit the corporeal movables to those designated. The words reviewing the general description of the property seem to have been used advisedly by the testator. That he did not intend that his entire personal estate should pass by the general description of corporeal movables, is evident from his limiting its application in the words descriptive of particular species of property, and the further fact that large portions of his personal estate are devised to particular legatees. And again to the wife he gives other corporeal movables, such as one-half of all tools, mules, etc. He speaks of the legacy to his wife of one-half of the Rienzi plantation a second time, and uses the expression that she should have one-half of everything belonging to Rienzi, except a claim of one hundred thousand dollars due, as alleged by the Federal government, and the other property he says he will dispose of further on. He had disposed of the Rienzi plantation — all the-immovable property he possessed. His other property then was movable, a part of which he had given to his wife, and the other property he proposed to dispose of thereafter.- The other property could only have been that which he had not disposed of. It may have been his intention, as is usual in wills, to make his wife the residuary legatee at the *1045 closing of his will. But unfortunately for her he failed to do so, and as to this part of his estate he died intestate. The presumption is that the testator intends to dispose of his entire estate and not to die partially intestate. Sometimes slight expressions, if they can be construed as his intention to do so, are seized upon as the means of carrying out the supposed intention of the testator.
We have carefully studied the expressions in the will to ascertain if anything could be gleaned by which the testator’s intention could be inferred as to the disposition of the residuum of his estate.
We are able to find none, except we are to adopt the construction of the wife’s counsel and presume that the testator, who-had lived so long on the Rienzi place that he had identified it with-his entire fortune and considered everything which had been made upon it as a part of Rienzi. But even then the whole general estate would not go to the wife, as he says: “I will that my wife do have one-half of everything belonging to Rienzi. In case a favorable opportunity is not afforded for the sale of the place, he says his wife shall be credited with the proceeds. But this expression, unexplained by others and standing alone, will not justify the interpretation that she was intended as the residuary legatee. It is an evidence, however, of the intention of the testator that his wife was to receive the net proceeds of the crop until the plantation finally passed from the control of the executors.
No particular form of words, it is true, is requisite to constitute one a residuary legatee. It must appear, however, to be the intention of the testator that the residuary legatee shall take the residue of the estate after payment of debts, and meeting all the appointments of the will. Williams, Executors, 1310, et seq.
Jarman, Vol. 3, p. 2, says: “In some instances, however, in favor of the restricted construction, founded on subsequent expression, description of a particular species of property, has not been allowed to prevail against the force of the previous general words.” In the cases cited for this textual declaration, there was some expression as to the disposition which showed that it was the intention to pass the residue of the estate.
Thus in Benet vs. Bachelor, 1 Ves. Jr: 63, there was after the previous general words, the expressions “and other, not before bequeathed poods and chattels that he should be in possession at the day of his decease.”
*1046 In Campbell vs. Prescott, 16 Ves. 505, the testator gave to his two sons all his sugar-house, cupola and merchandise, stocks,with jewels, plate, household goods, furniture and all effects whatsoever.
In Michel vs. Michel, 5 Madd., 69, after a bequest of linen, china, household goods and furniture, the words were followed by “and effects he shall die possessed of.”
And in other eáses cited, there are expressions such as: “ and all his other effects; or whatever else I may then be possessed of at my decease,” “his wines and property in England.” In all these cases “ the mere enumeration of particular articles, followed by a general bequest, did not of necessity restrict the general bequest, because a testator often threw in such specific words, and then wound up the catalogue with some comprehensive expression for the very purpose of preventing the bequest from being so restricted.” Jarman, Wills, 362.
Mr. Jarman says, p. 344: “These cases indicate the disposition of the judges of the present day to adhere to the sound rule, which gives to words of a comprehensive import their full extent of operation, unless some very distinct ground can be collected from the context for considering them as used in a special and restricted •sense.”
“Itis to be observed, however, that in all the preceding cases there was no other bequest capable of operating on the general residue of the testator’s personal estate, if the clause in question did not. Where there is such a bequest, it supplies an argument of no inconsiderable weight in favor of the restricted construction, which is then recommended by the anxiety always felt to give to a will such construction as will render every part of it sensible, consistent .and effective.”
Thqre was no expression in the will following the particular description of the property after the general description of “all corporeal” movables to indicate that the wife was to have the residuum of his personal estate; nor is there any indications of any intent to make any other legatee the recipient of this residuum. We are forced to the conclusion from a consideration of the entire instrument that he intended the balance of his personal estate to go to his legal heirs, a disposition, in doubtful meaning, which the law favors.
The will speaks from the death of the testator that being the point *1047 of time at which it becomes operative, 21 Conn. 550-516; unless the language used, such as the word now, or a verb in the present tense which requires it to be taken at the time it is used. 1 Jarman, Wills, 318.
But it will receive the former interpretation if it can reasonably be made to bear it. 2 Cox Ch. 384. It is plain from the terms of the will that the testator intended that the plantation should be sold, and the proceeds distributed as directed by him. Speaking from the time of his death for the future sale of the property, he said to his executors that they should sell the Rienzi plantation and distribute the proceeds; and until they did sell it, the proceeds should go to the wife. The legatees could not sue immediately after the death of the testator, fora partition in kind, as this would have been contrary to the positive mandate of the testator. The plantation was directed to be sold in the most positive language. The legatees then were only interested in the proceeds of the sale. The net proceeds belong to the wife from the time of the death of the testator until the sale of the place. No other reasonable interpretation can be given to the language of the testator. If the plantation should have been sold with the growing crop, it would have passed with the place and increased the proceeds.
So long as the plantation remained in the hands of the executors, Mrs. Allen was entitled to the proceeds of the crops. If not sold in accordance with the directions of the testator it is only at the moment of delivery to the legatees if they choose to hold it in indivisión that the growing crops pass to them as part of the immovable.
The testator says that “I will that my wife to have a one-half of everything belonging to Rienzi.” This declaration is explanative of the desire that his wife should have one-half of the plantation, mules, tools, etc. The wife under this declaration is entitled to one-half of everything on the plantation, attached to the same, immovable by nature or by destination, or by the object to which they are applied. C. C. 462, et seq.
Everything on the plantation, placed there for its service, is immovable by destination if it is essential for the gathering of the crop, preparing the same for market, or for the improvement of the quality of the land, or to feed the stock and cattle necessary for working the same.
The manufacture of sugar is the preparing of the crop of cane for *1048 market. Coal is an essential thing for the running of the machinery of the sugar house. Although not mentioned in the Code, it is to be classed, if destined during the grinding season for the service of the mill, as immovable by destination. The hay, corn, fodder and coal were placed on the plantation for the use of the place and con - sumed in the cultivation of the plantation, in working the crop and preparing the same for market. The legal heirs are not entitled to the value of the same. The timber and the old iron were not essential for the use of the plantation and were not employed for the cultivation of the same. They therefore fall into the residuum.
Immediately after the legacy of the one-half of the plantation and a claim the testator held against the Federal government is the language: “And to the five children of my sister Oynthi A. Smith, Gaston Smith, Fred. W. Smith, Jr., Mrs. Nellie Huchens, Ogden Smith and Thomas A. Smith.” There is no period after the bequest to the Allen heirs, but this as a distinct sentence follows. We know that the testator was not familiar with the English language; that he-was deficient in the use of words, used capitals indifferently, and was not proficient in composition. That he intended that his sister’s children should participate in this bequest, is evident from the subsequent language in the will bequeathing to Fred. W. Smith his note for five hundred dollars as “'part of his share heretofore given him.” He had given no “ share” except in the bequest to the Allen and the Smith heirs. He evidently had in his mind a bequest to his sister’s children.
Following immediately the bequest to the families of his brother, Thomas H. Allen’s four children, is the legacy to the children of his sister, and the testator intended to make a continuous sentence and to provide for his sister’s children as liberally as he had done for those of his brother.
We are satisfied from the entire context of the will that the testator intended that his sister’s children should participate in the legacy of half of the plantation, and the claim against the government of the United States.
When the reading of a whole will will produce a conviction that the testator must necessarily have intended an interest to be given, which is not bequeathed by express and formal words, the court will supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible the intention which *1049 it is of opinion that he has on the whole sufficiently declared. Metcalf vs. Farmington Parish, 128 Mass. 375; Boston Safe Deposit & Trust Company vs. Coffin et als., 8 Lawyers’ Reports, p. 748; 25 N. E., 30; Post vs. Huger, 38 N. Y. 599.
Punctuation must give way whenever it interferes with the proper and reasonable construction of a will. 8 Lawyers’ Reports, p. 744, notes; 25 N. E. 30.
The devise to his brother’s children should be connected with the devise to his sister as one continuous sentence.
He gives to the families of his brother’s four children. They do not take therefore per capita, but per stirpes. The number or the names or the children are not mentioned. In the bequest to the sister’s children there is no language used which would justify the inference that the testator intended that they should receive differently from the families of his brother’s children. The legacy is to the five children of his sister, and construing this in connection with the bequest to his brother’s children’s families, it is clear to our minds that the testator intended that these five children should be grouped as a family, and take per stirpes as the children of his brother’s families. Each set of children is therefore entitled to one-fifth. Hyatt vs. Pugsley, 23 Barbour, 299.
To the three nieces named in the will, it says that they are to receive five hundred dollars more in cash, and have no interest in any other claim. They had received five hundred dollars each, and the legacy to them is plain in its meaning, that each was to receive five hundred dollars in addition to that already given to them by the testator in his lifetime. They are to have no interest in any other claim. As to the residuum of the estate, the testator died intestate. They could have no interest in any claim given to other legatees. They could possibly lay claim to nothing else than the residuum of the estate. The testator must have referred to this, for there is no other fund upon which the legatees could assert any right. They are therefore excluded from any participation in the residuum of the estate.
Although opposition was made, for uncertainty of that part of the-, will which directs that a good education should be bestowed upon,, the two boys of Mrs. Cragin; we do not find the matter discussed im the briefs of counsel. We presume, therefore, that it has been, abandoned. But as the account of the executors are not final, and! *1050 the question may hereafter be raised, we will pass upon this part of the will.
The rule in regard to the inadmissibility of parol evidence, to vary, contradict or to render intelligible the words of a will, is not essentially different from that which obtains in regard to contracts. It may be received to show the state of the testator, the nature and condition of his property, his relations to the contestants, and all the surrounding circumstances. But this is done to place the court in the condition of the testator, in order, as far as practicable, to make them the more fully to understand the sense in which he used the language found in his will. 1 Greenleaf Ev. Par. 287-289; Jarman, Wills, 349, notes.
But parol evidence is not admissible to supply any words or defects in the will. Id. 28 Barb. 285; 27 Ala. 489.
In this case there is no reason to supply any words or defects in the will. There is no doubt as to the intention of the testator or to the subject matter of the bequest.
The testator has defined his object with reasonable certainty, and the court can, from the data furnished by him, ascertain the amount necessary to carry into effect his intention. The judge heard evidence as to the amount necessary to educate the two boys of Mrs. Cragin, and in thus acting he did not vary or avoid the intention of the testator, or in any way contradict any part of the will. McCorn vs. McCorn, 100 N. Y. 511; 13 West Rep. 614; 12 West Rep. 857; 144 Mass. 164; 18 How. 385.
We find no reason to disturb the rulings of the District Judge on this issue, nor do we find any error in his ruling as to the attorney’s fees and the commissions of the executors. The succession is in no condition for final settlement. The crop of 1894 has not been disposed of and the sugar bounty claim uncollected. Succession of Gardere, ante p. 289.
The judgment appealed from is amended so as to give to Mrs. Bettie Alien the net proceeds of the crop on Rienzi plantation for the year 1894, and to one-half of the plantation, one-fifth interests in same to each of the families of R. H. Allen, Jr., T. H. Allen, Jr., Harry Allen; one-fifth to Mrs. Latham, and one-fifth to the children of Mrs. Cynthia Smith.
In all other respects the judgment is affirmed, the succession to pay costs of appeal.