ODOM, J.
 

 Plaintiff, an attorney at law, prosecutes this suit against the widow and heirs of Eugene G. Robichaux to recover $7,500 for professional services rendered for the said Robichaux prior to his death and $17,500 for opening and closing his succession. The trial judge fixed the amount due plaintiff for services rendered Mr. Robichaux prior to. his death at.$3,650, and allowed him a fee of $9,500 for his services in connection with the succession. Defendants appealed, and plaintiff asks that the judgment be so amended as to allow the full amount claimed.
 

 1. Eugene G. Robichaux died on August 19, 1930, leaving a last will by which he named an executor, and also named plaintiff as attorney to represent the executor in opening and settling the succession. The effects of the succession were appraised at $426,-407.56. This did not include the growing crop of cane, which, we are informed by counsel for plaintiff, was worth over $100,000. Just why this item was omitted from the inventory is not satisfactorily explained. Evidently there was some reason for the omission, and we shall not consider that item in our consideration of the case presented. The
 
 *1029
 
 succession owed debts amounting to considerably more than $300,000. We shall not go into detail as to the debts further than to say that apparently there was a net estate worth approximately $120,000.
 

 Plaintiff's services in connection with the succession included the probating of the will, supervising the making of the inventory, the calculation and determination of the inheritance tax due the state, and the tax due the United States government, having the testamentary executor qualified, looking after the sale of certain stocks and bonds, the rearrangement and readjustment of certain obligations due by the succession, and the payment of others, and finally having the widow and heirs of the deceased recognized and sent into possession. For these services plaintiff asked that he'be allowed a fee of $17,500. The trial judge allowed a fee of $9,500.
 

 On this branch of the case, the only question is whether the judge erred in fixing the fee at that amount. Plaintiff and counsel for defendant are wide apart on their estimates as to the value of these services. Counsel for defendants thinks a fee of $6,000 would be adequate, while plaintiff thinks his fee should be fixed on a percentage basis, and that he should receive not less than 4 per cent, of the inventoried value of the estate. Plaintiff is supported in his view as to the amount of the fee by the testimony of eminent practitioners who were called to testify in his behalf, some of them being from the New Orleans bar and others from the country parishes. These attorneys, or at least a vast majority of them, expressed the opinion that the fee charged by plaintiff is not excessive.
 

 It was shown that the minimum fee. fixed by the New Orleans .Bar Association in succession matters where an administration is necessary, and, when the assets of the succession exceed $10,000, is 2% per cent. In this schedule, under the heading “Special Provisions,” the following appears:
 

 “When an administration of an estate is perfunctory and where the heirs are sent into possession without the filing of an account this shall be treated as a putting into possession, in so far as the minimum fee bill is concerned.”
 

 In the same schedule the minimum fee for putting in possession is 1 per cent, where the amount involved exceeds $50,000. .
 

 Many decisions by this court are cited by. counsel for the respective sides. It is needless to say that neither this nor any other court can lay down an ironclad, inflexible, rule for the fixing of the fees of attorneys in» succession matters.
 

 The safe, true rule to follow in all eases of this kind is to ascertain as nearly as possible the value of the services rendered. and to fix the fee accordingly. A careful reading of all the decisions will disclose that the value of the services rendered by the attorney was the dominant idea in fixing the! fee in the particular case under consideration. We follow precedent where there is any, but the decision really set no precedent in cases of this kind. Each case is decided according to the particular or peculiar facts and circumstances presented. In all of our decisions we have recognized and applied, as nearly as possible, the principle that the laborer is worthy of his hire, and have allowed or approved fees accordingly.
 

 
 *1031
 
 In the early case of Succession of Macarty, 3 La. Ann. 517, 521, Chief Justice Eustis said:
 

 “The responsibility of determining the amount of fees for professional services is a matter of great delicacy; and under the rules on which our predecessors and the profession have acted for years, a court in fixing them in a case of this kind must be guided by a conscientious estimate of their value."
 

 In the case of Dinkelspiel & Hart v. Pons, 119 La. 236, 43 So. 1018, Justice Land, speaking for the court, said:
 

 “Determining the fees for services of an attorney is a matter of great delicacy, and a court in fixing them must be guided by a conscientious estimate of their value. State ex rel. St. Amand v. Bank, 49 La. Ann. 1060, 22 So. 207. Expert opinion, in such cases, is a guide, but is not necessarily controlling on the court. Randolph, Singleton & Browne v. Carroll, 27 La. Ann. 467; 4 Cyc. 1003. Where the nature and extent of the services are shown by the record, it is the duty of the court to bring to bear its knowledge of the value of the services of counsel. Gathe v. Broussard, 49 La. Ann. 312, 21 So. 839.”
 

 In Hunt v. Hill, 138 La. 583, 70 So. 522, 526, the present Chief Justice was the organ of the court, and, in an exhaustive opinion in which the jurisprudence was reviewed, said that “expert opinion in such cases (cases fixing fees for attorneys) is a guide, but is not necessarily controlling on the court," and as relating to the fees approved by this court in succession matters it was said:
 

 “It appears from the foregoing review of our jurisprudence that the attorney’s fees allowed in succession matters have ranged from 2 to 5 per cent, of the amount of the inventory. * * * In only one of the successions to which we have been referred did the attorney’s fee exceed 5 per cent. That was in the Succession of Rabasse [51 La. Ann. 590, 25 So. 326], involving much litigation and several appeals to this court; and a fee of $6,000 — not quite 5% per cent.— was allowed."
 

 In Succession of Williams, 156 La. 704, 101 So. 113, 116, it was said “the court must exercise its own judgment, guided, but not controlled, by the expert testimony of lawyers.”
 

 The opinion of eminent lawyers as to the value of services rendered by members of their profession in any given case is helpful, and should always be considered. At the same time courts should and do keep in mind that there is an esprit de corps among men of the same profession which restrains them from underestimating the value of their own services.
 

 There is this to be said with reference to the opinions of lawyers as to the value of services rendered by one of their profession in any given case, and that is that, unless the witness is familiar with all the facts and circumstances, unless he knows all that was done and how it was done, unless he knows all the steps taken and proceedings had, and is familiar with the amount of time and labor involved and the responsibility assumed, necessarily he cannot correctly estimate the value of the services rendered.
 

 We are not convinced that the able and learned lawyers who testified in this ease were altogether familiar with the facts.
 

 
 *1033
 
 The courts presided over by Justices Martin and Eustis established the rule, which subsequent jurisprudence has consecrated, that, in estimating the value of services rendered by attorneys in succession matters, there must be taken into consideration the responsibility incurred (and this involves a consideration of the amount involved), the extent and character of the labor performed, the importance of the questions involved, and the legal knowledge and attainments of counsel.
 

 The skill, legal knowledge and attainments of Mr. Peltier are of the highest order, and that he was diligent and efficient in the handling of all matters intrusted to his care is not questioned. Rut we are not convinced that the value of the services he performed in connection with the opening and closing of this succession exceed the amount allowed by the trial judge, under whose eye much of the service was rendered.
 

 Mr. Robichaux left a last will in which he appointed Mr. Leche, executor, and named Mr. Peltier as attorney. This will was found by members of the Robichaux family and turned over to Mr. Peltier, who had it probated. This was on August 26, 1930. The will was probated by Mr. Aucoin, clerk of court, who signed the usual order for an inventory. The succession owned property in three parishes, and, while Mr. Peltier did not make the inventory, he supervised the making of it. On September IS, 1930, the inventory having been made, Mr. Peltier applied to the court to have Mr. Leche confirmed as executor, which was done and letters issued to him.
 

 The succession was much involved in debt. It owned 28 bonds of the New Orleans Public Service, Incorporated, par value $100 each, and 20 shares of Whitney National Bank Stock. These bonds and this stock were pledged to the Hibernia Bank & Trust Company to secure a debt of $20,000. On October 28 Mr. Peltier, as attorney for the executor, presented a petition to the court asking authority to sell the bonds and the stock to pay the debt. The order was granted, but the bonds were not sold immediately.
 

 It became necessary to readjust or rearrange certain of the obligations due by the succession and Mr. Peltier handled those matters successfully out of court. There were matters of detail in connection with the large estate, the handling of which the executor would not undertake and these were referred to the attorney.
 

 On October 28, 1930, two months and two days after the executor was appointed, the widow and six children of Eugene G. Robichaux, who were the legatees under this will, petitioned the court, through plaintiff as attorney, to be sent and placed in possession of all the property of the succession, and the sheriff was made a party in order that the inheritance tax might be fixed. Mr. Peltier did the work necessary in computing the amount of the tax. The rule was set down for October" 28, the day the petition was filed, the sheriff filed his answer, and, on .the same day,' judgment was signed sending the heirs into possession. The matter of the succession debt due the federal government was looked after and adjusted by the attorney. He testified that an expert offered to do that work for $750, but, as he was familiar with all the details, he did it himself.
 

 
 *1035
 
 In November, 1930, subsequent to the date bn which the heirs were sent into possession, plaintiff prepared and presented to the court another application to have certain securities sold at private salé to pay debts. The order was granted, and five days later another application was made to sell the bonds and stock above mentioned to pay a debt of $20,000 to a New Orleans bank, the balance of the proceeds, if any, to be applied on another note of the deceased held by the same bank. After this no other court proceedings were had in connection with the succession in which plaintiff acted as counsel.
 

 It will thus be seen that Mr. Peltier represented the succession or heirs in six different court proceedings, once in having .the will probated, once in having the executor confirmed, once in having the heirs sent into possession, and made three applications to have certain stocks and bonds of the succession sold.
 

 In all these matters, there was no contest, no opposition. All the proceedings were purely perfunctory. The heirs were sent into possession, cum onere, two months and two days after the executor was. appointed. Only a small portion of the debts were paid, and that with the proceeds of the sale of some bonds and bank stock. No provisional or final .account was ever filed. The widow and heirs of the deceased took over the property of the estate and assumed its obliga•tions, and this in a little more than two ¡months after the executor; was appointed. .There' was really no administration of the succession-in the true sense.
 

 In á letter written by Mr. Peltier on September 17, 1930, to a certain law firm in New Orleans, which represented a creditor, he said:
 

 “In reply to your letter of September 11, I beg to advise that the succession of E. G. Robichaux is absolutely solvent and that an administration will not be necessary. The writer is having the executor qualified and will have the heirs sent into possession of the entire estate within the next few days. Mr. Robichaux owns several plantations and sugar houses, none of which are encumbered and the family is in position to settle all obligations.”
 

 As was stated by this court in Hunt v. Hill, supra, we have allowed attorneys’ fees in succession matters ranging from 2 to 5 per cent, of the amount of the inventory; the amount allowed being always based upon the value of the services rendered. In a few isolated cases, as in Succession of Herdman, 161 La. 762, 109 So. 482, where the succession was under administration for eight years, we have allowed much higher fees. But such cases establish no precedent.
 

 The fee allowed by the trial judge, $9,500, is approximately
 
 2%
 
 per cent, of the inventory. He thought that was ample compensation, and we think so too.
 

 2. Mr. Peltier had been Mr. Robichaux’ attorney for some five or six years prior to his death. The record shows that he had advised and represented him in many cases. Mr. Robichaux called upon him for his advice and services when he needed them. Except in some isolated cases, no fee was agreed upon and no bill was rendered until after the death of Mr. Robichaux. This is satisfactorily explained by Mr. Peltier, who says that during those years the matter of
 
 *1037
 
 fees and their payment
 
 was
 
 mentioned occasionally, and that each time he told his client that at a more convenient season he would make out his account and present it. Mr. Robichaux was a man of large affairs and amply able to pay. This Mr. Peltier knew, and saw no reason for pressing the claims. This course is not strange, but happens in the experience of all lawyers.
 

 Mr. Peltier presented his itemized account to the executor and heirs. Two of the items thereon, each for $500, are admittedly correct and are not resisted. Some of the items are contested on the ground that the services were rendered for
 
 corporations in which
 
 Mr. Robichaux was interested and not for him personally. From our examination of the account presented and the reading of the testimony, we are convinced that in each instance, except one, where claims are contested on this ground, the services were in fact rendered for Mr. Robichaux personally and not for the corporation. The instance referred to is the establishment of a bonded warehouse under the laws of the state.
 

 One item on plaintiff’s account was reduced hy the trial judge from $3,000 to $1,000. The fee charged is for the settlement, out of court, of an income tax claim made by the federal government against Mr. Robichaux for $20,000; the claim being settled for $250. We think the fee charged in this case is clearly excessive, and we approve the reduction made.
 

 One item for $1,500 was rejected in toto. This item is for “general advice, both legal and business, innumerable opinions during the last five years of the life of Eugene 6. Robichaux, including matters pertaining to his several corporations and also pertaining to numerous indebtednesses by him to others and amounts claimed by him from others, none of which are included in any of the items herein contained.” This statement -of this item is too general and vague to admit of proof, and was properly rejected.
 

 ■Some of the other items were correctly reduced by the judge, and as to these counsel for defendant says at page 10 of his brief:
 

 “If these items of account have been legally proven, then we submit that the value of the services as fixed by the judge of the lower court is correct.”
 

 Counsel’s contention is that, plaintiff’s suit having been brought after the death of Mr. Robichaux, but within one year, “the kind and class of evidence to establish the claim must necessarily conform to section 2, Act No. 11 of 1926.”
 

 That section of the act reads as follows;
 

 “That parol evidence shall be incompetent and inadmissible to prove any debt or liability upon the part of a party deceased, if a suit upon the asserted indebtedness or liability shall have been brought within a delay of twelve (12) months after the death of the deceased, unless it consists of the testimony of at least one credible witness of good moral character, besides the plaintiff; or unless it be to corroborate a written acknowledgment or a promise to pay, signed by the debtor.”
 

 ' Mr. Peltier testified that he had performed the services, that, the fee charged was reasonable; and that the bill had not been paid. Counsel for defendant contends that Mr. Pel
 
 *1039
 
 tier’s testimony lacks sufficient corroboration.
 

 Wei do not concur in that view. Mr. Alfred G. Robichaux, a son of the deceased, said he was familiar with his father’s business, being intimately associated with him, that he knew Mr.' Peltier' was his father’s attorney, and that his father had sought and obtained his advice and services in many instances over a period of several years, and that nothing had been paid for such services, unless his father had paid in cash, and that was not his custom. This testimony sufficiently corroborates that of plaintiff that the services were rendered and not paid for.
 

 Counsel cites the case of Bock v. Succession of Tierney, 8 La. App. 704. In that case the plaintiff claimed to be a creditor of the succession for wages. Plaintiff’s testimony was not corroborated except by the books which were kept by himself.
 

 For services rendered Mr. Robichaux, the district judge allowed plaintiff’s claims amounting to $3,640. The testimony warrants this allowance, and we approve it.
 

 The judgment appealed from is affirmed.