188 So. 732

Succession of VATTER.

Nos. 35079, 35189.

April 3, 1939.

Rehearing Denied May 1, 1939.

Johnston Armstrong, of New Orleans, for appellant Protestant Home for Babies.

Terriberry, Young, Rault & Carroll, and Harold J. Zeringer, all of New Orleans, for appellees Terriberry, Young, Rault & Carroll and appellants Rudolph F. Schneider and another.

PONDER, Justice.

Mrs. Henrietta Vatter, widow of W. H. Dielmann, died at her domicile in the City of New Orleans on May 31, 1937, leaving a last will and testament made in the olographic form, dated August 5, 1936, which reads as follows:

> "New Orleans, La.
> "Aug. 5th, 1936.

> "I Ottilia Vatter Dielmann being of sound mind make this my last Will and Testament To the Home for Incurables at 612 Henry Clay Ave. I leave 50,000 with the request that it be used as an endowment funds, the income from which to be used to keep the annex known as the Elise Dielmann Baering Memorial in good repair and used as far as possible for purpose intended vis: Home for Epileptics.

"Home for feeble minded girls at Gentilly 3,000 Light House for the Blind 5,000.

"Salvation Army 5,000

"Warrington House 5,000

"Tubercular Hospital on Gentilly Tract 5,000 Dielmann Evangelical Centre at Waveland Miss 15,000 to keep the place in proper repair.

"To my God child Vivian Mansfield Demary of Detroit.

"Mrs. Olyve B. Gill, Mrs. Norman Walker and Mrs. Henry Grice each 500.

"Dorothy and Joe Naser each 500.

"Mrs. Marion Rand Schneider 10,000 and diamond watch.

"All my other Nieces & Nephews 5,000—this does not include great nieces & nephews.

"Any interest I may still have in the Frank Vatter Real Estate and Investment Co. to my nieces and nephews share and share alike—this likewise does not include great nieces & nephews.

"Jackson Ave. Evangelical Church 3,000.

"Lilly Mitchel faithful maid of my deceased daughter 200.

"Any nurse I may have at the time of my passing providing she has been with me six months or longer 100.

"To my son in law Arthur Baering to whom I have already given 5,500 and various smaller amounts 4,000.

"My diamond bar pin to Clara Mae Ridgway.

"Ethel O. Garic has in her possession a three leaf cloves diamond ring should she prefer the large solitaire she can select that and return the other. Mrs. W. M. Garic first choice of any other rings and Mrs. George Eastman second.

"My large platinum ring diamond in centre surrounded by smaller ones to Mrs. Henry Vatter. '

"My bracelet to Mrs. Olyve B. Gill and oblong pin to Anne Gilbert Jackson.

"Every thing remaining after the foregoing bequest have been made to go to the Protestant Home for Babies on Chestnut and Eight St.

"Due to financial conditions my estate may not yield as much as I have bequeathed in the event of which all large amounts with the exception of the amount left to Home for Incurables and Mrs. Marion Rand Schneider be cut down in keeping with amount realized.

"I appoint my brother Henry H. Vatter and R. F. Schneider Executor of my Estate and beg that they carry out my wishes as faithfully as possible.

"Had intending leaving Protestant Home for the Aged and Infirm on Magazine & Elenore Sts., and State St. Orphan Asylum, a liberal amount but since they have recently been handsomely endowed I decided on more needy institutions.

"[Signed] Ottilia Vatter Dielmann"

The will was duly probated and the executors were duly qualified. An inventory was taken and an appraisement made showing that the effects of the succession were

composed of bonds, stocks, certificates of deposit, notes, coupons, jewelry, an annuity insurance policy, and cash, in the value of $371,596.31. A provisional account was filed showing that the only debts the succession owed besides the expense of last illness and the funeral expense were, viz., W. W. Young, notary of public, for the taking of the inventory, $2,091.31; Thomas Pearlstine, appraiser fee, $522.83; August Bond, appraiser fee, $522.83; Whitney National Bank $22; New Orleans Country Club, $11; Southern Bell Telephone Company $0.68; and for advances made by the attorneys for the executor on installments of income tax $76.62. On the petition of the Protestant Home for Babies, claiming to be the residuary legatee, the executors were ordered to file a final account. The final account showed that the assets of the succession amounted to $379,708.19. In the final account the Protestant Home for Babies was only listed for $469, the value of the jewelry not otherwise disposed of in the will; Terriberry, Young, Rault and Carroll, attorneys for the executors, were listed $15,000 for attorneys' fees; Henry H. Vatter, one of the executors, was listed for $5,000 for special services rendered to the decedent prior to her death; and the nieces and nephews mentioned in the will as "all my other nieces and nephews," being five in number were listed for $5,000 each. The Protestant Home for Babies opposed the final account contending that under the provisions of the will the "other nieces and nephews" should have been listed for $5,000 for all, or $1,000 each, there being five in number. The Protestant Home for Babies contended that

the attorneys' fees should be listed for $10,000 for the reason that $15,000 was excessive. The Protestant Home for Babies contended that the $5,000 listed to Henry H. Vatter for services rendered to the testatrix prior to her death should not be allowed. Upon trial of the opposition to the final account the lower court rendered judgment rejecting the claim of Henry H. Vatter for $5,000, reducing the claim of the five nieces and nephews mentioned in the will as "all other nieces and nephews" from $25,000 to $5,000, and rejected the opposition as to the attorneys' fees. After judgment was rendered on the opposition to the final account the executors filed a motion for a new trial prior to the signing of the judgment. The motion for a new trial was denied and the executors appealed from the judgment in so far as it rejected the claim of Henry H. Vatter and reduced the claim of the nieces and nephews. The Protestant Home for Babies, the residuary legatee, appealed from the judgment in so far as it allowed the attorneys a fee of $15,000. On motion to dismiss the appeal on behalf of the residuary legatee this court dismissed the appeal in so far as it related to the claim of Henry H. Vatter for $5,000. Subsequently, Henry H. Vatter, in his individual capacity, appealed from the judgment rejecting his claim.

The appeal on behalf of the Protestant Home for Babies presents only one question for determination, viz., whether or not the attorneys' fees should be reduced from $15,000 to $10,000.

The appeal of Henry H. Vatter in his individual capacity presents only one question

for determination, viz., whether or not he is entitled to recover $5,000 on his claim for services rendered the decedent prior to her death.

The appeal of the executors presents two questions for determination; first, whether or not under the provisions of the will the nieces and nephews were entitled to $5,000 as a whole or $5,000 each; and second, whether or not the trial court abused its discretion in refusing to grant the executors a new trial.

 The appellant contends that the service rendered by the attorneys in this case being purely routine and including no serious litigation the fee allowed by the lower court of $15,000 is excessive and should be reduced to $10,000. The appellant has cited many decisions in support of his contention and many decisions have been cited by the appellee to the contrary, after an examination of which, we find that the amount allowed as attorneys' fees depends upon the particular and peculiar facts of each case and as a rule the amount allowed in one case does not show much light on the question of what should be allowed in another. Each case is decided according to the peculiar and particular circumstances and facts. Succession of Filhiol, 123 La. 497, 498, 49 So. 138; Peltier v. Thibodaux, 175 La. 1026, 144 So. 903. It was stated to the effect in Peltier v. Thibodaux, supra, that the value of the services rendered is the dominant idea in fixing the fee in the particular case under consideration. This court has on numerous occasions stated to the effect that the responsibility of determining the amount of such fees is a matter of great delicacy and under the rules of our predecessors a court in fixing such fees must be guided by a conscientious estimate of their value. While this court feels a delicacy in reducing the fees of attorneys yet the responsibility for fixing the amount rests with us. Taking into consideration the value of the estate and the services rendered in this case it would appear that a fee of $10,000 would be reasonable. In the case of Peltier v. Thibodaux, supra, this court allowed a fee of $9,500 as attorneys' fees in a succession appraised at $426,407.56, wherein there was a succession opened, a will probated, and the succession settled. The services rendered in this case are very similar. The only litigation in this case was raised in the opposition to the final account. The executors appealed to this court from the judgment of the lower court rejecting the individual claim of one of the executors which appeal was dismissed by this court. Then the executor in his individual capacity appealed. The attorneys could not claim any amount from the succession for services rendered in the furtherance of the executor's individual claim. After carefully considering all the facts in this case we have arrived at the conclusion that the attorneys' fee should be reduced to $10,000.

 The claim of Henry H. Vatter of $5,000 for services rendered the testatrix prior to her death should be rejected. This claim was only supported by the testimony of the claimant. It is stated in the claimant's brief that his testimony is corroborated by another witness, referring to the

transcript page of the other witness's testimony. An examination of the other witness's testimony shows that all that witness testified to was to the effect that Mr. Vatter was attending to the finances of the testatrix prior to the testatrix's death. It is to be borne in mind that Mr. Vatter was the testatrix's brother. The witness did not testify that Mr. Vatter was to receive any pay for his services. The mere fact that the testatrix's brother was looking after her finances does not corroborate the fact that he was to receive pay for such services. Mr. Vatter, in his own testimony, stated that while he had been looking after the testatrix's affairs for several years that he at no time presented the testatrix a bill for such services. We do not believe that the testimony of Mr. Vatter that he was to receive pay for the services rendered his deceased sister is corroborated as contemplated by Article 2277, R.C.C., and Act No. 11 of 1926.

As to the claim of the nieces and nephews that they are entitled to $25,000 instead of $5,000, a mere reading of the will shows that the testatrix did not mean that each niece or nephew was to receive $5,000. For this court to arrive at a different conclusion it would have to read the word "each" into the will. A reading of the will shows that the testatrix in other instances where bequests were made and where she intended each to receive a certain amount, the word "each" was used. The bequest is plain and unambiguous, "All my other nieces and nephews 5,000." Under the provisions of Article 1712, R.C.C., the intention of the testator must be gathered from the words of the will and when the words of the will are plain and unambiguous the testator's intentions should be ascertained from the language used in the will giving the words used their usual signification. The decisions cited under Article 1712 are numerous. The appellant has cited many authorities to the effect that the intent of the testatrix must be ascertained if possible and that the language used in the will must be understood according to its common, popular acceptation. We agree with the appellant on these principles of law but do not see how these principles of law can avail the appellant. The appellant cites authorities to the effect that when a testator uses terms different from that sanctioned by usage, they must be taken in the sense in which it is believed he understood them and that the intention of the testator must prevail over the grammatical meaning of the words used, recourse being had to the entire instrument to determine the testator's intention. The appellant relies principally on the case of Succession of Allen, 48 La.Ann. 1036, 20 So. 193, 55 Am.St.Rep. 295. The court stated to the effect in that case that in the confection of the will the testator was ignorant of grammar and the most elementary rules of composition, that the inapt and confused expressions would have to be overlooked and construed in the logical conclusions and consistent expressions in an effort to obtain the testator's intention. In the instant case there is no confusion of language and the language used is clear and unequivocal. The lower court relied in its decision on the case of Succession of Irby, 174 La. 558, 141 So. 59.

The will in that case stated "I give and bequeath to my following friends the sum set after their respective names, to wit: Harry B. Caplan, $5,000, Mary and Garland Wolfe, $5,000." It was held by this court that the legacy was one conjointly made and that if the testator had intended that the legatees should receive $5,000 each, he would have used the word "each" after their names, or would have fixed the amount of the legacy at $10,000. We are of the opinion that the facts in the instant case and the Succession of Irby, supra, are very similar, and the reasons given by this court in the Succession of Irby, supra, as above quoted, are equally applicable to the facts in the instant case.

 It is contended that the lower court abused its discretion in overruling a motion for a new trial. An examination of the record shows that the executors filed a motion for a new trial on three grounds; first, that the judgment rejecting the claim of Henry H. Vatter is contrary to the law and the evidence, in so far as it held that the claimant's testimony was not corroborated in the manner required by the provisions of Act No. 11 of 1926; second, that the court erred in reducing the amounts of the nieces and nephews from $5,000 each to $1,000 each, inasmuch as the court ignored the decision of Succession of Allen, 48 La.Ann. 1036, 20 So. 193, 55 Am.St.Rep. 295; third, that since the trial of the case the executors have discovered new evidence, a witness who will testify that the testatrix told the witness that she was going to pay Henry H. Vatter for his services and that the testatrix told the wit-

ness that she was leaving to her nieces and nephews the sum of $5,000 each. Under the doctrine laid down in the decision of this court on the motion to dismiss the appeal herein in so far as it applied to the claim of Henry H. Vatter, the motion for a new trial as to the claim of Henry H. Vatter will have to be denied. The motion for a new trial was not filed by Henry H. Vatter individually and there is no motion in the record for a new trial on behalf of Henry H. Vatter individually. The executors were the ones who filed a motion for a new trial and this court cannot entertain the motion on appeal for the same reasons that the motion to dismiss the appeal was sustained with regard to the individual claim of Henry H. Vatter.

In the motion for a new trial it was contended that the decision in the case of Succession of Allen, supra, was ignored. We have already discussed this case and decided that it is not applicable.

 The testimony of the witness to the effect that the testatrix told the witness that she was leaving her nieces and nephews the sum of $5,000 each would be inadmissible. There is no uncertainty or ambiguity in the language used in the will and the language used therein cannot be changed by verbal testimony. Succession of Quinlan, 118 La. 602, 43 So. 249.

For the reasons assigned the judgment of the lower court is amended by reducing the fees of the attorneys for the executors to $10,000 and as amended the judgment is affirmed. Henry H. Vatter

individually is to pay the cost of the appeal taken with reference to his individual claim. The Succession is to pay all other costs of this appeal.

HIGGINS, J., absent.