69 So.2d 51 (1953)
224 La. 299
PEISER et al.
v.
GRAND ISLE, Inc.
No. 41112.
Supreme Court of Louisiana.
November 9, 1953.
Rehearing Denied December 14, 1953.
Deutsch, Kerrigan & Stiles, (Robert E. Leake, Jr., and Rene H. Himel, Jr., New Orleans, of counsel), for appellants.
Montgomery, Barnett, Brown & Sessions, Walter M. Barnett, Jr., Arthur L. Ballin, and Leon S. Cahn, New Orleans, for appellee.
HAMITER, Justice.
As owners of approximately 2% of the outstanding stock of Grand Isle, Inc., *52 Henry C. Peiser and Abraham Shushan, Sr., instituted suit on February 14, 1952 to obtain the appointment of a receiver for that corporation, they alleging as a cause of action mismanagement of the business in nine specific respects. In connection therewith, to prevent a disposal of properties and otherwise a changing of the corporation's status, a temporary restraining order was secured.
Shortly thereafter the order was dissolved and then re-issued. About the same time George Danziger, as administrator of the Succession of Alfred D. Danziger (owner and holder of approximately 97% of the stock), intervened in the cause and joined in opposing the appointment of a receiver.
On March 25, 1952, following a hearing on two rules, the court again dissolved the temporary restraining order; it denied the applications for a preliminary writ of injunction and for the appointment of a receiver; and it dismissed plaintiffs' suit at their costs.
On plaintiffs' complaint this court reviewed the proceedings under our supervisory powers; and on June 2, 1952, having found no error, we recalled the writ that had been issued. A rehearing was denied July 3, 1952. See 221 La. 585, 60 So.2d 1.
Thereafter, in the district court, Grand Isle, Inc. moved in writing to assess against Peiser and Shushan, the unsuccessful applicants for the receivership, attorney's fees of $20,000 and alleged expenses and costs totaling $5991.51. A rule issued in connection with the motion; and after a hearing thereon the court made it absolute, assessing $12,500 as attorney's fees and the further sum of $990.13 as expenses and costs.
From the judgment Peiser and Shushan perfected this appeal, they contending that no liability whatever exists, and, alternatively, that the fees and expenses allowed are exorbitant. An answer to the appeal has been filed by Grand Isle, Inc. in which it asks that the allowance of attorney's fees be increased to $20,000 and that a rejected claim of $4994.38 for services rendered by George Danziger, the corporation's president, be recognized and approved.
Respecting the issue of liability vel non, LSA-R.S. 12:753(C) appears to be decisive. Insofar as pertinent it reads:
"If the minority shareholder unsuccessfully prosecutes his cause for the appointment of a receiver, he shall not only be condemned to pay the cost of the proceedings, but shall be further condemned to pay reasonable counsel fees, and other reasonable expenses to the corporation * * *."
Appellants argue that these provisions are penal in nature and that the damages contemplated may be assessed only in the event it be determined they acted in bad faith or palpably abused the judicial process. The conditions thus mentioned are not to be found in the statute. It is made operative on the mere failure of a minority shareholder to successfully prosecute his application for receivership, the obvious purpose thereof being to compensate the corporation for the actual damages sustained as a result of the futile attempt. Here, the minority shareholders so failed; hence, it cannot be said that the trial court erred in decreeing liability.
Neither do we feel justified in disturbing the judgment respecting the items approved and the quantum thereof.
At first blush, and considering that the receivership proceedings were terminated within a period of less than five months, the allowance of $12,500 attorney's fees would seem somewhat large. However, in our passing upon the appropriateness of compensation fixed for attorneys numerous circumstances must be considered. As said in Naef v. Miller-Goll Manufacturing Co., 176 La. 979, 147 So. 52, "* * * In estimating the value of services rendered by attorneys in any case, we take into consideration the responsibility incurred, which involves a consideration *53 of the importance of the litigation, as well as the amount involved, the extent and character of the labor performed, and the legal knowledge and attainments and skill of counsel. Peltier v. Succession of Thibodaux, 175 La. 1026, 144 So. 903, and authorities there cited." Furthermore, expert opinion in such cases is a guide, although not necessarily controlling on the court. Randolph Singleton & Browne v. Carroll, 27 La.Ann. 467; Hunt v. Hill, 138 La. 583, 70 So. 522; Peltier v. Thibodaux, supra. Important also, and exceedingly pertinent here, is that "* * * the question of the value of services rendered by an attorney-at-law is one that comes peculiarly within the province of the judge before whom the services were performed. He superintends the making up of the record, becomes closely acquainted with all the details of the proceeding and thus obtains an intimate knowledge of the kind of services rendered and of their value. * * *" Massey v. Consumer's Ice Co. of Shreveport, Inc., 223 La. 731, 66 So. 2d 789, 790.
Prior to and on the commencement of the receivership proceedings, as is shown by the record, a liquidation of the corporation out of court was being planned by the management and majority stockholders, they having had in mind principally an avoidance of heavy income taxes. The corporate assets were valued at $378,000, of which $250,000 represented unimproved land that had cost only $33,000. The plan was to distribute this land among the stockholders, in lieu of their shares, the reason being that from sales consummated by them the profits realized would be subject to much less income taxes than would profits from conveyances by the corporation.
In defense of the receivership suit three attorneys represented the corporation, namely Messrs. Walter M. Barnett, Jr., Arthur L. Ballin and Leon S. Cahn. In view of the various and general charges of mismanagement, according to their testimony, they were required to perform extensive research through innumerable books and records that covered a period of many years, this, of course, being in addition to the preparation of pleadings and briefs and to court appearances; and, in doing so, their work was carefully dovetailed to avoid duplication. They kept time sheets, and each was certain that he devoted at least two and one-half months exclusively to the cause.
Under date of July 9, 1952, a few days after a rehearing was denied by this court, a statement of account for services rendered was issued jointly by the attorneys to the corporation, it listing a total fee of $20,000 and a credit for payment of $1500 that had been made previously. Regarding the various elements that they considered in arriving at the charge Mr. Cahn testified (the others substantially agreed):
"First of all I considered the importance of the matter to the corporation, which was the danger that the program for saving the corporation enormous sums in taxes might be defeated if this suit were successful. I have outlined the details of that in the beginning of my testimony. I considered that from the standpoint of the importance to the corporation that this suit be defeated. I also considered that this was a corporation with gross assets of some $378,000 as testified in the record, and with practically no liabilities other than those incurred in this matter, and that was the res involved in the litigation, and then I also considered the amount of effort that each and every one of us put into. I can gauge the two of yours, Mr. Ballin's and yours by my own, because I was present a good part of the time the work was done. I knew we had devoted the best part of three months,I don't want to say three full months, let's say the better part of three months of this year to this case. I know in my practice I was unable to attend to very much else of my work because of the necessities of this case, and I consider you and Mr. Ballin were in the same category. I knew we had all spent lots of long hours at night and other times outside of ordinary *54 office hours, and I considered that all of those factors considered, particularly the fact that the matter was successfully defended, justified the fee that had been charged."
Other members of the New Orleans Bar who gave testimony as to the value of the services were Messrs. Monte M. Lemann, Sumpter D. Marks and Harry B. Kelleher, they having been qualified and offered as experts. Prior to the hearing each had been well informed about the receivership proceedings; he had read the briefs filed therein and the opinion of this court; and he had examined the above mentioned time sheets. Mr. Lemann suggested as a fee a minimum of $10,000 and a maximum of $20,000. In giving the basis for his opinion, he said:
"I took into account the value of the property of the corporation, the amount of savings that might be considered to have accrued to the corporation by preventing a forced sale, the amount of time spent by counsel in the case, and the standing at the bar and their experience and education, and qualifications."
With practically the same elements in mind both Mr. Marks and Mr. Kelleher thought that a fee within the range of from $15,000 to $20,000 would be reasonable and proper.
Appellants offered no expert testimony; in fact, they have not even suggested any definite amount as a reasonable fee. In the brief their counsel rely on and discuss five decisions of this court in which attorney's fees in amounts smaller than that fixed herein were assessed against unsuccessful applicants for receiverships; and in conclusion they say "* * * that a maximum award of attorney's fees for services in defending this action on its merits, should the court hold them assessable at all, could not properly exceed a fraction of the district court's allowance." The decisions thus relied on cannot be considered controlling of the instant matter, they being distinguishable by reason of different facts and circumstances. We find them interesting, however, in that in none was a district court's award of attorney's fees changed.
Included in the allowed expenses and costs (totaling $990.13) are items protested by appellants and described as a fee of an accountant, salary of a bookkeeper, and charges for printing briefs, transcribing testimony and obtaining maps. The evidence is sufficient to justify the allowance of the items, it disclosing that they were paid for by the corporation and that the indebtedness therefor was incurred solely as a result of the institution of the suit.
Through the answer to the appeal, as pointed out above, appellee asks that the judgment be amended to provide compensation to George Danziger in the sum of $4994.38 (the claim was rejected by the district court) "for special services rendered in the defense of this suit." We are not disposed to grant the request. There can be no doubt that Mr. Danziger devoted many hours of his time to a preparation for the trial, particularly to investigating corporate records, obtaining needed information to refute the charges made, and attending numerous conferences with the attorneys and auditors. But it is to be remembered that he was then the president of the corporation and also the duly qualified administrator of his brother's succession which held approximately 97% of the corporation's stock; and it strikes us that when performing the claimed "special" tasks he was serving and acting only in the mentioned capacities and properly discharging duties owed by him to the entities represented.
For the reasons assigned the judgment is affirmed.
FOURNET, C. J., dissents for the written reasons assigned.
PONDER, J., dissents on the amount of the award.
*55 HAWTHORNE, J., dissents. I am of the opinion that the amount awarded as attorney's fees is excessive.
FOURNET, Chief Justice (dissenting).
This is a sequel to the case of Peiser v. Grand Isle, Inc., reported in 221 La. at page 585, 60 So.2d 1, et seq., where, in reviewing on certiorari the judgment of the lower court dissolving a temporary restraining order previously issued, denying the preliminary injunction, and rejecting the demands of plaintiffs for appointment of a receiver, we recalled the writs; and the case is now before us on appeal by the same plaintiffs to review the lower court's judgment wherein attorney's fees of $12,500 were assessed against them, under LSA-R.S. 12:753(C). Defendant answered this appeal, seeking to have the attorney's fees increased to $20,000 and certain rejected claims for services recognized.
While it is true that the attorneys are supported in their claim by the testimony of other attorneys, expert opinion in such cases is a guide but is not necessarily controlling on the Court. See Randolph, Singleton & Browne v. Carroll, 27 La.Ann. 467; Gathe v. Broussard, 49 La.Ann. 312, 21 So. 839; Dinkelspiel & Hart v. Pons, 119 La. 236, 43 So. 1018; Hunt v. Hill, 138 La. 583, 70 So. 522; Succession of Williams, 156 La. 704, 101 So. 113. And, as pointed out in Peltier v. Thibodaux, 175 La. 1026, at page 1032, 144 So. 903, at page 904, "The opinion of eminent lawyers as to the value of services rendered by members of their profession in any given case is helpful, and should always be considered. At the same time courts should and do keep in mind that there is an esprit de corps among men of the same profession which restrains them from underestimating the value of their own services." (Italics mine.)
As author of the opinion when this case was previously before us, I reviewed and studied all of the proceedings in that record; and after reading the testimony in this case I am convinced that the fee assessed against the plaintiffs due to the unsuccessful prosecution of the receivership proceedings is excessive. In fact, I think the author of the majority opinion entertains some misgivings, as indicated by the remark that "At first blush, and considering that the receivership proceedings were terminated within a period of less than five months, the allowance of $12,500 attorney's fees would seem somewhat large."
One of the reasons, if not the principal one, for this Court's ruling declining plaintiffs' petition for a receiver (based on provisions of subsections (2) and (11) of LSA-R.S. 12:752) was that "Inasmuch as it appears that the board of directors of the corporation are contemplating an extrajudicial liquidation of the affairs of the corporation pursuant to the provisions of their charter and the laws of this State, a receivership to accomplish the same purpose, without a showing to the contrary, would but prolong the procedure and add expense"; the Court specifically pointing out that "If, at some future time, the directors attempt to dissipate the assets of the corporation or otherwise to put the interests of the plaintiffs in imminent danger [as had been done by the former president of the corporation], they have their remedy in court." [221 La. 585, 60 So.2d 4.]
An examination of this record discloses that the basis for the large size of the demand on the part of counsel, and the fixing of the award at $12,500, is that these three attorneys devoted almost three months of their time exclusively to this case. On close scrutiny of their testimony, however, I find that Attorney Ballin testified that according to his time sheet he devoted 146 hours to his portion of the work; Mr. Barnett testified, from his records, that he worked on the case 121 hours; and Mr. Cahn's time sheet indicated a total of 124 hours. If we assume that these attorneys work union hours, Mr. Ballin worked 18 full days of eight hours per *56 day, Mr. Barnett worked 15 full days, and Mr. Cahn worked 15½ full days. In my opinion, a fee of $5,000 would amply compensate these attorneys for the services they have rendered in this particular case.
The evidence also indicates that the attorneys in fixing their own fee, and experts in their testimony that such a fee was reasonable for the services rendered, based their conclusion largely on the fact that by liquidating the corporation in the manner that had been recommended (extra judicial, by surrendering the assets to the stockholders after paying the debts), they would avoid a substantial income tax liability. Of course, the only ones who will profit by this are the stockholders who employed the attorneys in this case as, under either method of liquidation, the corporation passes out of existence.